## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 24-cv-21385-BLOOM/Elfenbein

FW DISTRIBUTING, LLC,

      Plaintiff,

v.

J.P. MORGAN CHASE BANK, N.A.
and VALLEY NATIONAL BANKCORP,

      Defendant.

_____/

### OMNIBUS ORDER ON DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT AND MOTIONS TO STRIKE

**THIS CAUSE** is before the Court upon Defendant JPMorgan Chase Bank, N.A.'s ("Chase") Motion to Dismiss Plaintiff's Complaint and to Strike Plaintiff's Requests for Attorneys' Fees and Costs, ECF No. [19]. Plaintiff FW Distributing, LLC filed a Response in Opposition ("Response"), ECF No. [29], to which Chase filed a Reply, ECF No. [42].

Also before the Court is Defendant Valley National Bankcorp's ("Valley") Motion to Dismiss Complaint and Motion to Strike, ECF No. [28]. Plaintiff filed a Response to Valley's Motion, ECF No. [37], to which Valley filed a Reply, ECF No. [46]. The Court has reviewed the Motions, the supporting and opposing submissions, the applicable law, and is otherwise fully advised. For the reasons that follow, Defendants' Motions are granted, and the Complaint is dismissed without prejudice.

### I.   BACKGROUND

This action for damages stems from non-parties Isaac and Giselle Halwani's ("the Halwanis") alleged fraudulent conduct committed using accounts located at banks owned by

Defendants Chase and Valley. On April 12, 2024, Plaintiff filed a Complaint alleging the following:

Plaintiff FW Distributing is a Florida limited liability company whose "beneficial owner and principal is Steven M. Rhodes ("Rhodes"). ECF No. [1] at ¶ 8. Mr. Rhodes "originally met the Halwanis in January 2021." *Id.* at ¶ 24. Approximately one year later, Isaac Halwani proposed an investment to Rhodes involving Halwani's purported frozen distribution business, BH Frozen Wheels ("BH Frozen"). *See id.* at ¶ 25. Under the proposal, "Mr. Rhodes, through his business entity FW Distributing," would enter a business relationship with BH Frozen where "FW Distributing would provide the capital" and BH Frozen "would receive bulk food purchase orders from food distributors, which BH Frozen Wheels would then source from various suppliers and sell to the distributors." *Id.* at ¶ 26. How this plan was supposed to play out is "BH Frozen Wheels and Isaac [Halwani] would present FW Distributing with the purchase orders from the food distributors" and Halwani or the supplier would provide FW Distributing with the "invoice for the specified items and the wiring information to purchase the items from the distributors." *Id.* "FW Distributing would [then] wire the funds directly to the supplier based on the wiring information provided." *Id.*

According to the terms of the agreement, once the delivery was received by the distributor, "FW Distributing [would] receive a wire from the buyer-distributor, and FW Distributing would split the profits on the transaction with BH Frozen Wheels." ECF No. [1] at ¶ 26. However, the several payments FW Distributing received were not payments from buyers but rather "a small amount of their 'investors' money [which Isaac Halwani used] to make these payments from sham bank accounts in the names of the purported buyers-distributors." *Id.* Although Rhodes believed he was sending and receiving funds from legitimate suppliers and distributors, it turned out the

Halwanis "created fake email accounts to communicate with Mr. Rhodes" and "generated fake purchase orders and invoices" to deceive Rhodes into "directing wire transfers from FW Distributing…to the Halwanis' business accounts at Chase and Valley." *Id.* at ¶ 27.

According to Plaintiff, "Chase allowed [Isaac] Halwani and his wife to operate numerous accounts in the names of over a dozen businesses to facilitate [Isaac Halwani's] shell game." *Id.* at ¶ 28. Over the course of four months, "FW Distributing transferred over $7.4 million for frozen food deals to bank accounts" that turned out to be "sham accounts created and controlled by the Halwanis." *Id.* at ¶ 30. During that time, FW Distributing sent "dozens of wires" ranging "from $200,000 to $700,000." *Id.* at ¶ 31. According to Plaintiff, "often times there were mismatches between the actual account name and the designee on the wire." ECF No. [1] at ¶ 31. "Chase [and Valley] nonetheless processed the wires." *Id.* at ¶¶ 31-32.

Once the funds arrived at Chase or Valley, "Halwani and his wife played a shell game with the funds, transferring them to and fro among various accounts." *Id.* at ¶ 32. A primary aspect of the shell game involved the Halwanis converting "the funds to their own use by paying off other debts they had incurred…often by withdrawing startling large amounts of cash." *Id.* "[F]rom January – April 2022, on nearly 20 occasions[,] the Halwanis withdrew between $100,000 and $400,000 in round dollar amounts from Chase and often on the same day as a large wire arrived from FW Distributing." *Id.* Although "some of the activity could be explained away as business-related, the account statement [reflected] expenditures on a luxury lifestyle that did not fit within the expected account activity." *Id.* at ¶ 36.

Moreover, "[o]ther Halwani-controlled accounts at Chase showed the same pattern of fraudulent transaction activity, including abundant quantities of large cash withdrawals and deposits." ECF No. [1] at 36. Not only were these large transactions frequent, but the deposits

often closely mirrored the withdrawals, resulting in a "miniscule balance [at the end of each month] compared with the hundreds of thousands of dollars of activity flowing through those accounts." *Id.* at ¶¶ 34, 36. Plaintiff also contends the Halwanis' "cash withdrawals and deposits [ ] reflect structuring activity—i.e., breaking large amounts into multiple smaller amounts and dispersing them among accounts in order to attempt to evade scrutiny." *Id.* at ¶ 33. Plaintiff notes that "[b]ecause the large cash transactions happened in person, they obviously could not have escaped the notice of bank personnel." *Id.* at ¶ 32.

While much of the large cash transactions and shifting of money occurred at Chase, "accounts at Valley reflected similar activity, albeit in smaller volume." *Id.* According to Plaintiff, the Halwanis' transaction activity at both banks "did not make sense because it plainly reflected fraud." *Id.* at ¶ 37. Despite Chase and Valley being "well positioned to observe the fraud that victimized Plaintiff and others," Defendants did not stop it but instead "readily facilitated the fraud [ ] by propping up Halwani with credit and allowing him to steal large amounts of cash both by wire and in person at the branch." ECF No. [1] at ¶ 37.

Plaintiff maintains that Defendants were "well positioned to observe the fraud" and ultimately stop the fraud because of the mechanisms banks are required to implement to prevent fraud and money laundering. *See id.* at ¶¶ 12-22, 37. Plaintiff asserts that "[b]anks such as Chase and Valley are obligated to comply with the Bank Secrecy Act, 31 U.S.C § 5311 et seq. ("BSA")…which require[s] Chase and Valley to develop, implement, and maintain an effective Anti-Money Laundering (AML) program that is reasonably designed to prevent the bank from being used to facilitate money laundering, fraud, and the financing of terrorist activities." *Id.* at ¶¶ 12-13. As a part of the AML program, the banks must conduct "a periodic review of account

activity sufficient to determine its consistency with expected activity." *Id.* at ¶ 14. Moreover, the

Defendants must also maintain a due diligence program wherein they are expected to:

> at a minimum…[a]scertain the identity of all nominal and beneficial owners of a private banking account…[ ] [a]scertain the source(s) of funds deposited into a private banking account and the purpose and expected use of the account; and [ ] [r]eview the activity of the account to ensure that it is consistent with the information obtained about the client's source of funds, and with the stated purpose and expected use of the account, as needed to guard against money laundering, and to report, in accordance with applicable law and regulation, any known or suspected money laundering or suspicious activity conducted to, from, or through a private banking account.

*Id.* at ¶ 15 (quoting 31 C.F.R. § 1010.620(b)). Not only must Defendants have anti-money

laundering and fraud detection procedures in place, they must also take "appropriate actions, up to

and including closing the account" once they are on notice of any indicators of money laundering

or other improper conduct such as—

> (1) funds transfers sent in large, round dollar amounts; (2) repetitive or unusual funds transfer activity; (3) funds transfers sent or received from the same person to or from different accounts; (4) unusual funds transfers among related accounts or among accounts that involve the same or related principals; (5) transactions inconsistent with the account holder's business; (6) customer use of a personal account for business purposes; and (7) multiple accounts established in various corporate names that lack sufficient business purpose to justify the account complexities.

*Id.* at ¶ 21.

As a result of Defendants' conduct, their internal processes and procedures for detecting

and investigating fraud, and their personal relationship with the Halwanis, Plaintiff asserts three

Counts against Chase and Valley: Count 1: Aiding and Abetting Fraud; Count II: Aiding and

Abetting Breach of Fiduciary Duty; and Count III: Aiding and Abetting Conversion. Count One

alleges Chase and Valley aided and abetted Isaac Halwani's defrauding of Plaintiff because "Chase

and Valley acquired knowledge that the Halwanis were not transacting through their accounts

either in accordance with their purported business purposes or in accordance with normal and

expected practice and thus [Defendants] acquired knowledge that the Halwanis were engaged in unlawful conduct involving the disposition of third parties' funds, such as Plaintiff's." ECF No. [1] at ¶ 40. Although Defendants had knowledge of the Halwanis' fraud, Plaintiff claims Defendants "nevertheless substantially aided, abetted, and/or participated in a fraudulent scheme." *Id.* at ¶ 41.

In Count Two, Plaintiff alleges Defendants learned "Isaac Halwani stood in a fiduciary relationship to his business partners, such as Plaintiff," and that Halwani was treating his business accounts in such a way so as to violate "his fiduciary duties involving the disposition of third parties' funds, such as Plaintiff's." *Id.* at ¶ 46. "Notwithstanding [their] knowledge,…Defendants substantially aided, abetted, and or participated with Halwani in his breach of fiduciary duty." *Id.* at ¶ 47.

In Count III, Plaintiff alleges that given Defendants' "knowledge of the [Halwanis'] accounts supposed business purposes and the Halwanis' account activity, along with their understanding of the accounts gained through due diligence, ongoing monitoring, and day-to-day interactions within the bank branch, Defendants acquired knowledge of the Halwanis' conversion of Plaintiff's funds." *Id.* at ¶ 51. Despite their knowledge, "Defendants substantially aided, abetted, and/or participated with the Halwanis in conversion of funds belonging to Plaintiff." *Id.* at ¶ 52.

Defendants seek dismissal of each Count as the Complaint fails to allege that Defendants had actual knowledge of the underlying misconduct or that they substantially assisted the Halwanis in carrying out the alleged misconduct. *See* ECF No. [19] at 2; ECF No. [28] at 2. Plaintiff responds that given the Defendants' internal monitoring procedures, the Halwanis' highly suspicious conduct and, in the case of Chase, the in-person interactions with the Halwanis', there is sufficient

circumstantial evidence to infer actual knowledge. *See* ECF No. [29] at 12-14; ECF No. [37] at 10-11.

Defendants contend even if Plaintiff has adequately alleged actual knowledge and substantial assistance, the aiding and abetting of a breach of fiduciary duty claim in Count Two still must be dismissed because the Plaintiff fails to allege facts to show that a fiduciary relationship existed between Plaintiff and the Halwanis. *See* ECF No. [19]; ECF No. [28] at 12. Since there is not a sufficient allegation of a fiduciary relationship, Defendants argue that they could not have aided or abetted a breach of that duty. Plaintiff maintains it has pleaded a fiduciary relationship between it and the Halwanis, and "has further pleaded that Chase [and Valley] knew or ought to have known of the relationship by virtue of [Defendants'] Know Your Customer and other regulatory-based practices." ECF No. [29] at 13-14; *see* ECF No. [37] at 8 n. 4.

Valley further argues that the Complaint should be dismissed as a shotgun pleading as it "fails to put the parties on notice of which conduct applies to which Defendant." ECF No. [28] at 13. Plaintiff responds that the Complaint does not constitute a shotgun pleading because it has not adopted "successive legal claims within one another," and "Plaintiff has separately identified its three claims for relief." ECF No. [37] at 14. Moreover, "Plaintiff has alleged specific facts regarding Valley's policies and procedures; the underlying misconduct that Valley aided; and the manner in which Valley aided that conduct through specified types of banking transactions." *Id.*

Defendants also seek to strike Plaintiff's request for attorneys' fees and costs as the request is not supported by contract or statute. ECF No. [19] at 13-14; ECF No. [28] at 14. While Plaintiff concedes that its claims do not provide for a statutory or contractual basis for awarding attorneys' fees, Plaintiff argues that there is no basis for Valley to strike a request for an award of costs given that there is a "venerable presumption that prevailing parties are entitled to costs." ECF No. [29]

at 17-18 (quoting *Marx v. General Revenue Corp.*, 568 U.S. 371, 377 (2013)); ECF No. [37] at 16

(quoting *Marx*, 568 U.S. at 377).

## II.   LEGAL STANDARD

### A.   Failure to State a Claim for Relief

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that

the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils–Amie*, 44 F. Supp. 3d 1224, 1228

(S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, No. 09–495, 2010 WL

3385356, at *3 (N.D. Fla. Aug. 25, 2010)). A pleading in a civil action must contain "a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although a complaint "does not need detailed factual allegations," it must provide "more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]'

devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at

557 (alteration in original)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550

U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative

level." *Twombly*, 550 U.S. at 555. When a defendant moves to dismiss for failure to state a claim

upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's

allegations as true and evaluate all possible inferences derived from those facts in favor of the

plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079

(S.D. Fla. 2019). However, this tenet does not apply to legal conclusions, and courts "are not bound

to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). "[T]he court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted). In considering a motion to dismiss, the court is limited to the facts contained in the complaint and attached exhibits. *See Thaeter*, 449 F.3d at 1352.

### B. Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). District Courts have "broad discretion in considering a motion to strike under Fed. R. Civ. P. 12(f)." *Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1317-18 (S.D. Fla. 2005). Despite this discretion, "'[a] motion to strike is a drastic remedy[,]' which is disfavored by the courts and 'will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.'" *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962) and *Poston v. Am. President Lines, Ltd.*, 452 F. Supp. 568, 570 (S.D. Fla. 1978)). "[A] prayer for relief not available under the applicable law is properly subject to a motion to strike." *Hodge v. Orlando Utils. Comm'n*, No. 09-cv-1059, 2009 WL 4042930, at *4 (M.D. Fla. Nov. 23, 2009).

## III.   DISCUSSION

### A.  Defendants' Motion to Dismiss[1]

Defendants argue that all three counts in the Complaint should be dismissed because Plaintiff fails to sufficiently plead claims for aiding and abetting. Defendants point out that to plead an aiding and abetting claim under Florida law, a plaintiff must allege "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abett[o]r; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." ECF No. [19] at 4 (quoting *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906-07 (11th Cir. 2012)); *see* ECF No. [28] at 5. According to Defendants, Plaintiff fails to adequately allege the second and third elements in each of its aiding and abetting claims. *See* ECF No. [19] at 4; ECF No. [28] at 5.

Regarding the second element requiring knowledge, Defendants contend that Plaintiff offers no allegation that would plausibly suggest Defendants had actual knowledge of the Halwanis' wrongful conduct. *See* ECF No. [19] at 5; ECF No. [28] at 6. Specifically, there is no allegation that Defendants knew the "Halwanis were committing fraud, had a fiduciary relationship with Plaintiff, breached a fiduciary duty to Plaintiff, or stole Plaintiff's money," nor is there an allegation indicating that there was anything "inherently tortious or suspicious about the Halwanis' transactions at the time they were made." ECF No. [19] at 5; *see also* ECF No. [28] at 6-7. Defendants assert that Plaintiff's claims that the "type, amount, and frequency of the Halwanis' banking activity should have raised internal red flags [for Defendants is] entirely conclusory." ECF No. [19] at 5; *see* ECF No. [28] at 7-8. Not only are such allegations speculative, but Plaintiff fails

---

[1] Although Chase and Valley filed separate Motions, the Defendants' arguments in favor of dismissal are virtually identical. *See generally* ECF No. [19] and ECF No. [28]. As such, the Court refers to their arguments collectively.

to explain how such conduct would give Chase or Valley knowledge that the Halwanis were using those transactions to further a tort or crime. *See id.* According to Defendants, the case law is clear: Plaintiff must allege facts that show Defendants had actual knowledge of the wrongful conduct. Mere failure to adhere to a certain standard of care or failure to comply with certain policies or recognize certain red flags is insufficient to properly assert an aiding and abetting claim. *See* ECF No. [28] at 8; ECF No. [19] at 6.

Defendants also contend that Plaintiff fails to allege facts that would plausibly show the third element—that Defendants substantially assisted the Halwanis' wrongful activity. According to Defendants, Plaintiff merely alleges substantial assistance by arguing that Defendants did nothing to stop the "supposedly suspicious transaction activity." ECF No. [19] at 10; *see also* ECF No. [28] at 11. However, Defendants argue that mere inaction or even the processing of transactions and the maintenance of bank accounts is not enough to establish substantial assistance so long as the defendant owes no special duty to the plaintiff. *See* ECF No. [28] at 10-11; ECF No. [19] at 11. Because neither Chase nor Valley owes a fiduciary duty to Plaintiff, Defendants claim Plaintiff has failed to sufficiently allege substantial assistance.

Alternatively, even if the Court does not dismiss the Complaint in its entirety, Defendants argue that the Court should still dismiss Plaintiff's claim of aiding and abetting the Halwanis' breach of fiduciary duty in Count Two. According to Defendants, Plaintiff does not allege that a fiduciary relationship existed between Plaintiff and the Halwanis. *See* ECF No. [19] at 12; ECF No. [28] at 12. While the Complaint alleges that "Mr. Halwani was a 'business partner' and 'custodian of Plaintiff's funds,'" those conclusory allegations do not establish that Plaintiff and Mr. Halwani "formed a partnership or any other cognizable relationship that would" cause the Halwanis to owe a fiduciary duty to Plaintiff. ECF No. [19]. Therefore, since no fiduciary duty

existed between the Halwanis and Plaintiff, Defendants necessarily could not have aided and abetted the Halwanis in the breach of that duty. *See* ECF No. [28] at 12; ECF No. [19] at 13.

Valley asserts an additional argument that Plaintiff's Complaint should be dismissed as an impermissible shotgun pleading "that routinely lumps Valley and Chase together as 'Defendants' in each cause of action, such that Plaintiff fails to put the parties on notice of which conduct applies to which Defendant." ECF No. [28] at 13. Valley claims this "lumping" of the two Defendants in each Count deprives Valley and Chase of fair notice and violates Rule 8 of the Federal Rules of Civil Procedure. *See id.*

Plaintiff responds that its allegations are sufficient to maintain its aiding and abetting claims against both Chase and Valley. Plaintiff first argues that it has sufficiently pleaded Chase's actual knowledge of the Halwanis' wrongful conduct since Plaintiff does not need to offer explicit allegations that Chase knew of the Halwanis' misconduct to survive a motion to dismiss. *See* ECF No. [29] at 10. "Allegations regarding Chase's internal policies" constitute sufficient circumstantial evidence of Chase's actual knowledge. *Id.* Given Chase's implementation of account monitoring procedures and frequent review and flagging of account activity like that of the Halwanis, Plaintiff contends Chase acquired actual knowledge of the Halwanis' fraudulent conduct. *See id.* at 12. Moreover, Plaintiff maintains that its allegation that Ms. Matos-Polit—the Halwanis' personal banker at Chase—facilitated and witnessed the Halwanis frequently withdraw large amounts of money further supports a plausible inference that Chase had actual knowledge of the wrongful conduct. *See id.* at 13.

Plaintiff contends that it sufficiently alleges Valley had actual knowledge as well. Similar to Chase, Valley has implemented a number of policies and internal procedures that require it "to understand its customers and their expected account activity, and to take measures—up to and

including account closure—when account activity is inexplicable considering the stated purpose, especially where there is an occurrence of repeated round-sum transactions, cash transactions, and self-dealing transactions of the sort that occurred here." ECF No. [37] at 10. Therefore, given those internal policies and account monitoring procedures, Valley was not only aware that the Halwanis were carrying out "transactions that conflicted with expected account activity," but the suspicious activity ultimately "demonstrated to Valley that the Halwanis were using the business accounts as their personal slush fund." *Id.* at 10-11. Plaintiff argues it is not merely alleging that Valley should have known of the Halwanis' misconduct but that "Valley actually knew about the intended use of the Halwanis' accounts…and actually witnessed and assisted in the execution of those transactions as the Halwanis siphoned supposed business funds for personal use." *Id.* at 11.

Plaintiff further argues that it has sufficiently plead Chase and Valley's substantial assistance to the Halwanis' fraud, fiduciary breach, and conversion. Plaintiff contends that a bank's inaction can serve as a basis for substantial assistance where the bank is "'confronted with clear evidence' of mishandled funds." ECF No. [29] at 14-15 (quoting *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1098 (11th Cir. 2017)); ECF No. [37] at 12 (quoting *Chang*, 845 F.3d at 1098). The Halwanis' account activity was not typical or routine but rather was obviously consistent with fraudulent activity. *See* ECF No. [29] at 15-16; ECF No. [37] at 12-13. Thus, because Chase and Valley continued to provide a platform for the Halwanis' fraud despite having procedures in place that alerted Defendants of the Halwanis' wrongful activity, the Defendants substantially assisted the Halwanis in their wrongful conduct. *See* ECF No. [29] at 15-17; ECF No. [37] at 13. Regarding Chase, Plaintiff also points out that the bank provided necessary credit to the Halwanis which allowed the Halwanis to continue their fraudulent scheme undetected. *See* ECF No. [29] at 2, 6, 15, 17.

Regarding Count II, Plaintiff contends that it has adequately alleged the existence of a fiduciary relationship between it and Isaac Halwani and Defendants had knowledge of that fiduciary relationship "by virtue of [Defendants'] Know Your Customer and other regulatory-based practices." ECF No. [29] at 13-14; *see* ECF No. [37] at 8 n. 4.

Regarding Valley's contention that the Complaint amounts to a shotgun pleading, Plaintiff asserts that Valley "is readily able to discern the allegations and claims that Plaintiff asserts against it." ECF No. [37] at 14. Plaintiff has "alleged specific facts regarding Valley's policies and procedures; the underlying misconduct that Valley aided; and the manner in which Valley aided that conduct through specified types of banking transactions." *Id.* (internal citations omitted). Accordingly, Valley has fair notice of the claims and allegations Plaintiff has made against it. However, even if the Court were to find Plaintiff's Complaint to be an impermissible shotgun pleading, the proper remedy is to allow the plaintiff one opportunity to replead rather than dismiss the case. *See id.* at 15.

A review of the Complaint and governing law compels the conclusion that Plaintiff has failed to sufficiently plead the necessary elements for each of its three aiding and abetting claims. To adequately assert an aiding and abetting claim under Florida law, a plaintiff must allege "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abet[o]r; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906-07 (11th Cir. 2012) (citing *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991); *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So.2d 368, 372 (Fla. 5th DCA 2005)).

a. **Actual Knowledge Requirement**

Regarding the second element, plaintiff must "sufficiently establish—or allow the fair inference—that the defendant had actual knowledge of the underlying tort." *Isiah v. JPMorgan Chase Bank, N.A.*, Case No. 16-CIV-21771, 2017 WL 5514370, at *3 (S.D. Fla. Nov. 15, 2017) (citing *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 950 (11th Cir. 2014)). While knowledge may be shown by circumstantial evidence, "in actions involving the liability of a bank for aiding and abetting its customer's Ponzi scheme, the second element, knowledge, will only be satisfied if the bank had '*actual* knowledge of the fraudulent activities.'" *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013) (quoting *Lawrence*, 455 F. App'x at 907) (emphasis added); *see Isaiah v. JPMorgan Chase Bank, N.A.*, Case No. 16-CIV-21771, 2017 WL 5514370, at *3 (S.D. Fla. Nov. 15, 2017). "[E]vidence establishing negligence, i.e., that a bank 'should have known,' will not suffice." *Wiand*, 938 F. Supp. 2d at 1244 (quoting *Aetna Cas. And Sur. Co. v. Leahey Const. Co*, 219 F.3d 519, 536 (6th Cir. 2000)). Accordingly, "[a]lleging that a bank disregarded 'red flags' such as 'atypical activities' on a customer's account is insufficient to establish knowledge." *Lamm*, 749 F.3d at 950 (citing *Ct. Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, No. 05-60080CIV, 2008 WL 926513, at *1 (S.D. Fla. Mar. 31, 2008); *Rosner v. Bank of China*, No. 06 CV 13562, 2008 WL 5416380, at *6 (S.D.N.Y. Dec. 18, 2008)); *see also Lawrence*, 455 F. App'x at 907 ("Florida law does not require banking institutions to investigate transactions.").

The Court agrees with Defendants that Plaintiff fails to satisfy the second element for each of its aiding and abetting claims as each Count lacks any specific allegation regarding how Defendants acquired knowledge of the underlying fraud. In each of Plaintiff's claims, it assumes in a conclusory fashion that "[c]onsistent with their anti-money laundering policies, internal

practices, and personal banking relationships with the Halwanis, Chase and Valley acquired

knowledge that:

> [1] the Halwanis were not transacting through their accounts either in accordance
> with their purported business purposes or in accordance with normal and expected
> practice and thus acquired knowledge that the Halwanis were engaged in unlawful
> conduct involving the disposition of third parties' funds, such as Plaintiff's[;]
> …
> [2] Isaac Halwani stood in a fiduciary relationship to his business partners, such as
> Plaintiff, and the fact that Isaac Halwani was not treating the accounts in accordance
> with their purported business purposes. Thus, they acquired knowledge that Isaac
> Halwani was engaged in conduct violative of his fiduciary duties involving the
> disposition of third parties' funds, such as Plaintiff's[;] [and]
> …
> [3] [the Halwanis' converted Plaintiff's funds].

ECF No. [1] at ¶¶ 40, 46, 50.

However, as Defendants correctly point out, those factual allegations merely demonstrate

Chase and Valley "should have known" about the Halwanis' fraudulent conduct, not that they

actually knew of the conduct. *See Platinum Estates, TD Bank, N.A.*, No. 11–60670–CIV, 2012 WL

76079, at *3 (S.D. Fla. Mar. 8, 2012) ("Conclusory statements that a defendant actually knew is

insufficient to support an aiding and abetting claim where the facts in the complaint only suggest

that the defendant should have known that something was amiss.") (quoting *Groom v. Bank of

America*, No. 8:08–cv–2567–JDW–EAJ, 2012 WL 50250, at *2–3 (M.D. Fla. Jan. 9, 2012)

(additional level of quotation and citation omitted)). Banks have a "right to assume that individuals

who have the legal authority to handle the entity accounts do not misuse the entity funds."

*O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1205 (11th Cir. 2003). Therefore,

"in providing only routine banking services, [Chase and Valley were] not required to investigate

[the Halwanis'] transactions." *Lawrence*, 455 F. App'x at 907.[2] Consequently, accepting as true

---

[2] While Plaintiff attempts to argue that the banks had a duty to investigate and take appropriate action upon
any discovery of suspicious activity under the Bank Secrecy Act, that duty is owed to the United States not
private bank consumers. *See Suzmar, LLC, v. First National Bank of South Miami*, 388 So.3d 852, 855 (Fla.

that Chase and Valley ignored obvious red flags, or "failed to adhere to an appropriate standard of care or to follow relevant policies, procedures, or regulations," such allegations are insufficient to show the *actual* knowledge necessary for Plaintiff's aiding and abetting claims. *Isaiah*, 2017 WL 5514370, at *3 (citing *Groom*, 2012 WL 50250, at *1); *see Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014) ("Florida does not require banking institutions that conduct routine banking services to investigate transactions involving its demand deposit accounts; therefore, merely alleging that a bank should have known of a Ponzi scheme based solely on a series of purportedly atypical transactions is not sufficient to survive *Twombly*.").

For instance, in *B-Smith Enterprises, LP v. Bank of America*, the district court found that Plaintiff's allegations that "Defendant 'honored the subject transactions,' which it allege[d] were 'nonroutine' because they were in whole dollar amounts and many were for $10,000.00 or more" was insufficient to show actual knowledge under Florida law. Case No. 21-80674-CV, 2021 WL 8316764, at *2 (S.D. Fla. Dec. 27, 2021) ("Plaintiff's argument that Defendant had actual knowledge of Mr. Sherman's breach of fiduciary duty because it honored the 'nonroutine' transactions is incorrect as a matter of law…Plaintiff must allege facts that show concrete evidence of Defendant's knowledge, such as accepting a payment for overstating the amount in an escrow account or allowing repeated overdrafts of a trust account." (citing *Chang*, 845 F.3d at 1094; *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 289-90 (2d Cir. 2006))). Indeed, "actual knowledge can be shown through willful blindness" but only where "a [defendant] has his or her suspicion aroused

---

3d DCA 2023) ("the KYC requirements contained in the federal Bank Secrecy Act, 31 U.S.C. § 5311, do not create a duty [the bank] owed to the [plaintiff] because bank consumers do not have a private right of action to enforce these rules.") (citing *TBTG, LLC v. Fid. Brokerage Servs. LLC*, Case No: 8:16-cv-83-T-36TBM, 2016 WL 9383325, at *4 (M.D. Fla. Oct. 17, 2016) (noting that "the Bank Secrecy Act and its implementing Regulations do not create a private right of action"); *SFS Check, LLC v. First Bank of Del.*, 990 F. Supp. 2d 762, 775 (E.D. Mich. 2013), *aff'd*, 774 F.3d 351 (6th Cir. 2014) (explaining [a]s the BSA does not create a private right of action, it also "does not provide a basis for imposing a duty of care owed by [the bank] to Plaintiff.")).

about a particular fact, realized its probability, but deliberately refrained from obtaining confirmation because he or she wanted to remain in ignorance." *Rusty 115 Corp v. Bank of America, N.A.*, Case No. 22-CV-80980-BER, 22-CV-22541-BER, 2024 WL 1619697, at *8 (S.D. Fla. Apr. 15, 2024) (quoting Florida Pattern Jury Instruction (Criminal) 3.3(h)). Thus, since the Complaint relies almost exclusively on the atypical nature of routine banking transactions and fails to specify with any precision when Defendants' suspicion would have reasonably been aroused or at what point Defendants deliberately ignored suspicious activity brought to their attention, Plaintiff has failed to adequately allege the Defendants' actual knowledge of the underlying misconduct. *See Lamm*, 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012) ("[W]hile the element of actual knowledge may be alleged generally, the plaintiff still must accompany that general allegation with allegations of specific 'facts that give rise to a strong inference of actual knowledge regarding the underlying fraud.'") (quoting *Lawrence v. Bank of Am.*, N.A., No. 8:09–CV–2162–T–33TGW, 2010 WL 3467501, at *3 (M.D. Fla. Aug. 30, 2010) (additional level of quotations omitted)).[3]

To refute the deficiencies Defendants raise concerning its actual knowledge allegations, Plaintiff cites several cases which purportedly support the argument that allegations regarding a bank's internal processes for detecting fraud, along with allegations of inaction by a bank, may be

---

[3] Plaintiff's allegation that Elizabeth Matos-Polit and other Chase employees provided in-person banking services does not alter the Court's analysis. The fact that Matos-Polit and other Chase employees regularly facilitated in-person transactions for the Halwanis may have made it more likely that Chase would have noticed potential red flags in the account, but it does not create a fair inference that Chase or its employees acquired *actual* knowledge of the Halwanis' fraudulent conduct. *See Bansal v. TD Ameritrade, Inc.*, Case No. 23-81539-Civ, 2024 WL 3009423, at *7 (S.D. Fla. June 7, 2024) ("And in *Wiand*, the court found that 'red flags' are 'insufficient to establish a claim for aiding and abetting because although they may have put the banks on notice that some impropriety may have been taking place, those alleged facts do not create a strong inference of actual knowledge of wrongdoing.'") (quoting *Wiand*, 938 F. Supp. at 1244-45)). There are no specific allegations that Matos-Polit or anyone else at Chase investigated the fraud or that they provided anything more than routine banking services. As such, employees' in-person services do not infer actual knowledge on Chase.

sufficient circumstantial evidence to support a plausible inference of actual knowledge. *See* ECF No. [29] at 11; ECF No. [37] at 9-10. However, the cases Plaintiff referenced are either inapposite or clearly distinguishable.

Plaintiff first points the Court to *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988 (11th Cir. 2014) and argues that, in *Perlman*, the court found "the plaintiffs' allegations that the bank's internal processes raised alarms about the accounts at issue, and that the bank's policies required account closure under such circumstances, were sufficient to maintain plaintiffs' aiding and abetting claims." ECF No. [29] at 11; ECF No. [37] at 9. However, Plaintiff oversimplifies the Eleventh Circuit's decision. In *Perlman*, the Eleventh Circuit explained that plaintiff's first amended complaint failed because the complaint fell into the "precise trap" previously outlined by the court in *Lawrence v. Bank of America, N.A.*, 455 F. App'x at 907. *Perlman*, 559 F. App'x at 993. The court determined that plaintiff's allegations that there were "a multitude of atypical transactions and procedural oddities, including: [the defrauder's] opening of various accounts, numerous transfers amongst the accounts within short time periods, thousands of deposits of even dollar amounts, large cash deposits and withdrawals, the absence of any investment activity, and Wells Fargo's lifting of the freeze on the Wealth Builders account without further investigation," all "f[e]ll short of raising a plausible inference that Wells Fargo actually knew that [the defrauder] was engaging in fraudulent activity." *Id.* The only reason the *Perlman* Court found that the proposed second amended complaint plausibly alleged actual knowledge is because Plaintiff provided additional precise and detailed allegations of Wells Fargo's knowledge of the fraudulent activity. *See id.* at 995. The second amended complaint referred to an internal report regarding the accounts in question and a deposition of a Wells Fargo investigator who testified she was alerted of potential fraud involving the accounts in question, and after investigating the accounts and

ultimately confirming the detection of questionable activity that was so egregious it "raised the hair on the back of your neck," failed to close the account within 30 days as was the usual procedure. *Id.*[4] Plaintiff, in this case, provides no similar allegations indicating the Defendants' specific knowledge. Instead, Plaintiff's claims of suspect activity in the Halwanis' accounts largely parallel the allegations the Eleventh Circuit found insufficient in Perlman's first amended complaint.

Plaintiff's reliance on *Lesti v. Wells Fargo, N.A.*, 960 F. Supp. 2d 1311 (M.D. Fla. 2013) to show that allegations of internal monitoring procedures and atypical transactions are sufficient to establish actual knowledge is similarly without merit. In *Lesti*, the court concluded the plaintiff's claims were sufficient not only because Wells Fargo Bank had policies and procedures to detect atypical transactions, but because the plaintiff specifically alleged that Wells Fargo had conducted an investigation of the fraudulent activity, recommended closing the account, but nevertheless permitted the account in question to stay open for an additional six months. *See* 960 F. Supp. 2d at 1325. Here, Plaintiff provides no allegations regarding a particular investigation into the Halwanis' accounts or the outcome of any such investigation. Instead, due to Defendants' "obligations to monitor customer behavior," Plaintiff presumes "Chase and Valley came to understand that the Halwanis'…were in fact funneling money to personal accounts and using it for personal ends," yet decided to do nothing after confirming the suspicious fraudulent activity. ECF No. [1] at ¶¶ 23, 37. However, Plaintiff offers no supporting facts to reach that conclusion. Plaintiff merely relies on the fact that Defendants provided the Halwanis' banking services and were therefore "well positioned to observe the fraud," to conclude that Defendants did in fact have actual

---

[4] After reviewing the accounts in question, the Wells Fargo employee was so concerned about the activity she contacted the Florida Department of Law Enforcement as well as an agent of the Internal Revenue Service to the review the information she had compiled concerning the suspect activity. *See Perlman*, 559 F. App'x at 995. Nevertheless, the accounts remained open for another three months. *See id.*

knowledge of the fraud. *Id.* at ¶ 37. But as the Eleventh Circuit explained in *Lamm*, such an inference is impermissible, even at the motion to dismiss stage of a proceeding. 749 F.3d at 950 ("Alleging that a bank disregarded 'red flags' such as 'atypical activities' on a customer's account is insufficient to establish knowledge.").

Plaintiff next cites to this Court's decision in *Pearson v. Deutsche Bank AG*, No. 21-CV-22437, 2022 WL 951316 (S.D. Fla. Mar. 30, 2022), but the Complaint in that case also had significantly different allegations than the Complaint here. While Pearson asserted that "Defendants both failed to investigate red flags and then did nothing about the fraud after they investigated and learned of the fraud," Pearson supported the claim with factual allegations detailing an email exchange and other communications between bank employees regarding the improper use of the custodial accounts in question. *Id.* at *8. Additionally, Pearson went beyond merely alleging that the defendants maintained a monitoring program. Plaintiff asserted that "bank employees instructed the Individual Wrongdoers on how to circumvent those monitoring systems." *Id.* Thus, the claims in *Pearson* went well beyond mere allegations of ignoring red flags and facilitating fraud by providing routine banking services.

Finally, Plaintiff argues that in *Gevaerts v. TD Bank, N.A.*, 56 F. Supp. 3d 1335 (S.D. Fla. 2014), the Court "ruled that bank policies can be evidence of what the bank actually knew, not only what it should have known." ECF No. [29] at 11; ECF No. [37] at 9. Yet again, the case Plaintiff cites to show that actual knowledge has been sufficiently plead is distinguishable from the case at bar. In *Gevaerts*, "the *crux* of [the p]laintiffs' pertinent allegations" were that the bank had actual knowledge of the underlying fraud given the bank's agreement with the New Jersey Bar to report overdrafts of attorney trust accounts. 56 F. Supp. 3d at 1341 (emphasis added). Since an attorney's overdrawing of an attorney trust account was itself strong evidence of a mishandling of

client funds, the Court concluded it was reasonable to infer actual knowledge of fraud based on the defendant's failure to report the wrongful conduct as required under the agreement with the New Jersey Bar. Unlike here, the defendant in *Gevaerts* had a clear obligation as a fiduciary to the plaintiff (as well as a specific agreement with the state bar) to investigate and report the activity in question, and its failure to do so directly contributed to the continuation of the wrongful activity.

Accordingly, because Plaintiff has failed to plausibly allege the actual knowledge element with respect to all three of its aiding and abetting claims, the claims must be dismissed.

**b.  Substantial Assistance Requirement**

The Court also finds that Plaintiff fails to adequately allege substantial assistance in each of its aiding and abetting claims. "Substantial assistance occurs when a defendant affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the breach to occur." *Pearson*, 2022 WL 951316, at *8 (quoting *Gevaerts*, 56 F. Supp. 3d at 1341). "A defendant does not provide substantial assistance unless his action, or inaction, was a 'substantial factor in causing the [underlying violation].'" *Pearson v. Deutsche Bank AG*, Case No. 21-cv-22437, 2023 WL 2610271, at *26 (S.D. Fla. Mar. 23, 2023) (quoting *In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 348 (Bankr. S.D. Fla. 2013)). Accordingly, courts have determined that allegations of "passive conduct by a bank which is being used as an unknowing conduit to further a scheme" will be insufficient to establish substantial assistance. *Mettrocity Holdings, LLC v. Bank of America, N.A.*, Case No. 22-CV-80980-BER, 2023 WL 6064516, at *8 (S.D. Fla. Sept. 18, 2023).

Moreover, "mere inaction 'constitutes substantial assistance only if the defendant owes a fiduciary duty *directly* to the plaintiff." *Chang*, 845 F.3d at 1098 (quoting *Lerner*, 459 F.3d at 295); *see Groom*, 2012 WL 50250, at *4 ("an allegation of the 'failure to act, absent a duty to act, is not

substantial assistance.'" (quoting *Hines v. FiServ, Inc.*, No. 8:08–cv–2569–T–30AEP, 2010 WL

1249838, at *4 (M.D. Fla. Mar. 25, 2010)).

Plaintiff provides an insufficient factual basis to support that either Chase or Valley

substantially assisted the Halwanis in carrying out their fraudulent scheme. Plaintiff alleges that

Defendants provided the Halwanis a platform to carry out their fraud against Plaintiff. *See* ECF

No. [29] at 15. However, Plaintiff merely attempts to establish liability based on the bare-bones

contention that Chase and Valley allowed the Halwanis to open numerous accounts, conduct

business in those accounts, and wire and withdraw money from those accounts despite allegedly

being aware of the Halwanis' fraudulent activity. Plaintiff does not allege any affirmative steps

Chase or Valley took other than processing the Halwanis' transactions and, in the case of Chase,

providing the Halwanis with a line of credit. However, "the substantial assistance prong cannot be

established where, as here, [Chase and Valley] had no duty to [investigate or] to disclose the

alleged irregularities in the transactions." *Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321,

1333 (S.D. Fla. 2012), *aff'd sub nom.* 749 F.3d 938 (11th Cir. 2014); *see also Groom*, 2012 WL

50250, at *4 ("And as discussed, substantial assistance is not established by conclusory assertions

that the banks permitted [the defrauder] to engage in suspicious transactions."). Since Plaintiff

does not allege that Defendants intentionally assisted in covering up the fraud scheme or

encouraged Plaintiff to invest in the Halwanis' venture, but instead merely provided ministerial

services that Defendants would provide to any customer, there is not a sufficient factual basis for

substantial assistance. *See Groom*, 2012 WL 50250, at *4 ("Plaintiffs' assertion that the Defendant

banks "made it possible for Pearlman and his cohorts to deposit vast sums of money" is likewise

insufficient." [ ] This is, at most, a conclusory allegation that the banks permitted a customer to

engage in suspicious transactions, which fails to establish substantial assistance.").

Moreover, Plaintiff has not sufficiently alleged substantial assistance simply by asserting that the Defendants provided the Halwanis a line of credit. *See id.* ("Equally insufficient is Plaintiff's apparent contention that [the defrauder] furthered his Ponzi scheme with funds borrowed from the banks."). Plaintiff relies on *Gilison v. Flagler Bank*, 303 So.3d 999 (Fla. 4th DCA 2020) as well as several other decisions which do not apply Florida law,[5] to argue that Chase's issuance of credit cards to the Halwanis amounted to substantial assistance. *See* ECF No. [29] at 15. The *Gilison* case involved a scheme where the plaintiff provided loans to the defrauder for the intended purpose of obtaining vehicle inventory for its business. *See* 303 So.3d at 1001. However, rather than selling the cars and using the proceeds to repay the loan, the defrauder acquired duplicate titles for the cars, sold the car under the duplicated title, and then collected the proceeds without paying the plaintiff. *Id.* at 1002. Gilison alleged the defendant bank aided and abetted the defrauder's fraudulent scheme by "maneuver[ing] critical funding to [the defrauder] so that it would appear solvent for as long as possible to attract investors" while simultaneously "hiding the wrongdoing." *Id.* Based on *Gilison's* allegations, without the funding from the bank, the defrauder's scheme would have been impossible because the investors would have not have been willing to invest in the venture in the first place.

---

[5] Because *Off. Stanford Invs. Comm. v. Breazeale Sachse & Wilson LLP*, No. 3:11-cv-0329-N, 2015 WL 13740747 (N.D. Tex. Mar. 24, 2015) and *Kneese v. Pershing, L.L.C.*, No. 3:10-cv-1908-P, 2012 WL 13019677 (N.D. Tex. Nov. 14, 2012) are District Court of Texas decisions applying Texas law, they are of limited persuasive value in the instant dispute involving Florida aiding and abetting law. Moreover, in *Official Standford Investors Committee*, the Court found substantial assistance based on allegations that the defendants provided legal services that facilitated investment into the fraudulent scheme. *See* 2015 WL 13740747 at *8-9. Specifically, the defendants issued a false legal opinion, prepared false legal reports, omitted key information to convince investors that the product was legal, and delivered fraudulent regulatory letters. *See id.* None of the district court's substantial assistance analysis hinged on an allegation from the plaintiff that defendants extended the defrauder a line of credit to keep the scheme afloat. And in *Kneese*, the district court made clear that "routine financing, standing alone, is insufficient to show substantial assistance." 2012 WL 13019677 at *5 (citing *Bane v. Sigmundr Exploration Corp.*, 848 F.2d 579, 582 (5th Cir. 1988)). Accordingly, the *Kneese* decision does not support the proposition that the issuance of credit cards constitutes substantial assistance.

In *Gilison*, the court found substantial assistance based on the allegations that the defendants provided the defrauders large sums of money for the purpose of keeping the scheme afloat and giving the defrauders the appearance of a strong financial condition. Here, however, Plaintiff merely alleges that Chase issued the Halwanis credit cards with generous credit limits.[6] *See Gilison*, 303 So.3d at 1003-04. Plaintiff makes no claim that Chase issued the credit cards for the specific purpose of facilitating the Halwanis' Ponzi scheme or that the credit cards were a "substantial factor in bringing about [Plaintiff's] alleged injury." *Id.* Even assuming the Chase credit cards prevented the Halwanis' scheme from fizzling out quicker than it did, there are no allegations that the cards were a necessary or even an important component of the Halwanis' scheme such that the Court could conclude issuance of the cards amounted to *substantial* assistance. *See In re Palm Beach Finance Partners, L.P.*, 517 B.R. at 348 ("Substantial assistance requires an affirmative step on the part of the aider-and-abettor that is a 'substantial factor'" in bringing about the alleged harm).

Importantly, Chase and Valley's alleged inaction, i.e., their failure to close the Halwanis' accounts upon discovery of the Halwanis' suspicious activity, may not support an inference of substantial assistance either. Plaintiff fails to allege any facts that support the theory that Defendants owed a fiduciary duty to Plaintiff.[7] The accounts in questions were not trust accounts

---

[6] Plaintiff does not seem to contend that the Complaint contains allegations that Valley issued the Halwanis credit cards or a line of credit. See generally ECF No. [37].

[7] Plaintiff fails to allege facts that support the conclusion that Defendants knew of a fiduciary relationship between Isaac Halwani and Plaintiff. However, even assuming such a relationship existed, and Defendants knew of the relationship, Plaintiff claim would still fail because Plaintiff must plausibly allege that Defendants had actual knowledge of Halwani's misappropriation. *See Chang*, 845 F.3d at 1094 ("a bank may be liable to a noncustomer for its customer's misappropriation when a fiduciary relationship exists between the customer and the noncustomer, the bank knows or ought to know of the fiduciary relationship, and the bank has actual knowledge of its customer's misappropriation") (emphasis added). Since Plaintiff has failed to adequately plead actual knowledge of the misappropriation, Plaintiff cannot rely on the *Chang* exception to establish a fiduciary duty between it and Defendants. *See id.*

and Plaintiff does not allege that Chase or Valley took on the responsibility of serving as a fiduciary for the Plaintiff. *See Rusty115 Corp. v. Bank of Am., N.A.*, No. 22-CV-22541-BER, 2023 WL 6064518, at *6 (S.D. Fla. Sept. 18, 2023) ("Under Florida law, banks ordinarily do not owe a fiduciary duty to their own customers (*Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321, 1331 (S.D. Fla. 2012)), and so it follows that a bank would also not owe a fiduciary duty to a third-party who chooses to deposit money into a customer's account.").[8] Thus, without a fiduciary obligation on the part of Defendants, Plaintiff is unable to rely on the Defendants' inaction to show substantial assistance. *See Sherman v. Gursky Ragan, P.A.*, 388 So.3d 1034, 1036 (Fla. 3d DCA 2024) (citing *Chang*, 845 F.3d at 1098) ("Mere inaction [in an aiding and abetting claim] constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff."). Accordingly, because Plaintiff fails to adequately allege either actual knowledge or substantial assistance, Plaintiff's aiding and abetting claims must be dismissed for failure to state a claim upon which relief may be granted.

Although the Court dismisses each of the Counts in the Complaint, the dismissal is without prejudice. Therefore, the Court addresses Defendants' remaining arguments to ensure that the Plaintiff cures all deficiencies should it elect to file an amended pleading.

### c. Failure to Plead the Existence of a Fiduciary Relationship Between Plaintiff and Isaac Halwani.

As noted above, Defendants maintain that the aiding and abetting a breach of fiduciary duty claim in Count Two should be dismissed because Plaintiff has failed to allege a fiduciary relationship between Plaintiff and Isaac Halwani.

---

[8] The *Chang* court explains why banks may be liable when the account in question is a trust account. "Because 'banks do have a duty to safeguard trust funds deposited with them when confronted with clear evidence indicating that those funds are being mishandled,' a bank's inaction—that is, its failure to stop the theft of such trust funds—can constitute substantial assistance." *Chang*, 845 F.3d at 1098.

Under Florida Law, "[t]he elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiffs damages." *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002). "To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Watkins v. NCNB Nat'l Bank, N.A.*, 622 So.2d 1063, 1065 (Fla. 3d DCA 1993). Therefore, "[g]enerally, 'in an arms-length transaction, [ ] there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own diligence have discovered." *Jaffe v. Bank of America, N.A.*, 667 F. Supp. 2d 1299, 1319 (S.D. Fla. 2009) (quoting *Watkins*, 622 So.2d at 1065) (additional level of internal citations and quotations omitted)). Florida courts have concluded this general principle of not imposing fiduciary obligations for normal commercial transactions extends to the lender-borrower context as well. *See Wilson v. EverBank*, 77 F. Supp. 1202, 1223 (S.D. Fla. 2015) ("Generally, an arms-length lender-borrower relationship implies no fiduciary duties from the lender to the borrower"); *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1226 n.13 (11th Cir. 2002) ("As a general matter, there is no presumed fiduciary relationship between a lender and a borrower under the common law."). While there are, of course, some exceptions to the general presumption against imposing fiduciary duties on parties engaged in arms-length transactions,[9] the "[f]acts supporting a claim of fiduciary duty must be pled with particularity." *Wilson*, 77 F. Supp. 3d at 1224 (quoting *Sussman v. Weintraub*, No. 06-20408-CIV, 2007 WL 908280, at *4 (S. D. Fla. Mar. 22, 2007); *see also Parker v. Gordon*, 442 So.2d 273, 275

---

[9] In some instances a fiduciary relationship may be implied "based on the circumstances surrounding the transaction and the relationship of the parties [ ] and may be found when 'confidence is reposed by one party and a trust accepted by the other.'" *Maxwell v. First United Bank*, 782 So.2d 931, 933-34 (4th DCA 2001) (quoting *Capital Bank v. MVB, Inc.*, 644 So.2d 515, 518 (Fla. 3d DCA 1994))

(Fla. 4th DCA 1983) ("it would be necessary to state with particularity the facts which purportedly created the duty that was breached, so that the court could determine as a matter of law whether there was such a duty")).[10]

Here, Plaintiff alleges that a fiduciary relationship existed between it and Halwani because "FW Distributing[] entered a business relationship with Isaac Halwani," and therefore, Plaintiff and Halwani were "business partners." ECF No. [1] at ¶¶ 25, 44, 46. However, Plaintiff fails to allege facts to plausibly support that a partnership was formed. Whether a relationship constitutes a partnership "is a legal conclusion and 'merely calling the relationship a joint venture or a partnership does not make it so." *EDN Global, Inc. v. AT&T, Inc.*, Civ. Act. No. 1:22-CV-02981, 2023 WL 2017283, at *3 (N.D. Ga. Feb. 14, 2023) (quoting *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1249 (11th Cir. 2007)); *see also American Honda Motor Co., Inc. v. Motorcycle Information Network, Inc.*, 390 F. Supp. 2d 1170, 1180 (S.D. Fla. 2005) ("Conclusory allegations that a confidential or fiduciary relationship existed, without any supporting factual assertions are insufficient."). "To establish a partnership, there must be a 'community of interest in performance of a common purpose, joint control or right of control, joint propriety of interest in subject matter, right to share in the profits, and duty to share in any losses which may be sustained.'" *Dreyfuss v. Dreyfuss*, 701 So.2d 437, 439 (Fla. 3d DCA 1997) (quoting

---

[10] While Plaintiff argues that the existence of a fiduciary relationship is too fact dependent to be resolved at the motion to dismiss stage, the Court disagrees. While in certain circumstances that might be the case, both Florida federal courts and Florida state courts regularly dismiss claims at the pleadings stage for failure to plausibly allege a fiduciary relationship. *See, e.g., Sherman v. Gursky Ragan, P.A.*, 388 So.3d 1034, 1036 (Fla. 3d. DCA 2024); *American Honda Motor Co. Inc. v. Motorcycle Information Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005); *Servicios De Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Intern., Inc.*, 264 F. App'x 878, 881 (11th Cir. 2008) (affirming a Southern District of Florida court decision dismissing complaint for failure to sufficiently allege a fiduciary relationship existed between the parties).

*Austin v. Duval County School Bd.*, 657 So.2d 945, 948 (Fla. 1st DCA 1995)). "These requirements are strictly construed and the absence of even one is fatal to the finding of a partnership." *Id.*

Plaintiff fails to plead the elements necessary to establish a partnership. While a liberal construction of the Complaint might allow the Court to find that the Plaintiff and Halwani had a common purpose, there is no contention that Plaintiff and Halwani had joint control or right to control the business venture. Moreover, Plaintiff and Isaac Halwani did not have a right to jointly share in the profits. Indeed, Plaintiff alleged that it and BH Frozen agreed to share in the profits from the venture, however, there is no allegation that Plaintiff and Isaac Halwani agreed to share in the profits. *See* ECF No. [1] at ¶ 26 ("FW Distributing would split the profits on the transactions with *BH Frozen Wheels*.") (emphasis added). Given there was no profit-sharing agreement or any other indication that a partnership existed between Plaintiff and Halwani, the relationship between Halwani and Plaintiff amounted to nothing more than an ordinary business relationship. "[W]hen parties are dealing at arm's length, 'a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other.'" *Identity Stronghold, LLC v. Zeidner*, No. 8:16-CV-868-T-35AAS, 2019 WL 12338322, at *10 (M.D. Fla. Sept. 11, 2019) (quoting *Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 541 (Fla. 5th DCA 2003); *see also In re Vision Dev. Grp. of Broward Cty., LLC*, 411 B.R. 768, 774 (Bankr. S.D. Fla. 2009) ("In Florida, no fiduciary duty exists between. . . sophisticated parties to an arm's length commercial transaction."); *Hansen v. Premier Aviation Holdings, LLC*, Case No. 17-cv-61025, 2017 WL 8893119, at *5 (S.D. Fla. Nov. 21, 2017) (noting "traditional business relationships [ ] are not ordinarily considered confidential or fiduciary").

Plaintiff thus fails to allege that Halwani owed it a fiduciary duty.[11] Because Halwani does not owe a fiduciary duty to Plaintiff under the facts plead, Defendants could not have aided or abetted Halwani in a breach of fiduciary duty as no such duty existed. Consequently, the Court finds it appropriate to dismiss Count Two for failure to allege the existence of the underlying fiduciary relationship.

### d.  The Complaint is an Impermissible Shotgun Pleading

The Court agrees with Valley that Plaintiff's Complaint constitutes an impermissible shotgun pleading. As the Eleventh Circuit explained in *Weiland*, there are four different ways a complaint may be found to be a shotgun pleading. *See Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). While there are several types, "the unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. "The most common type [of shotgun pleading]…is a complaint containing multiple counts where each count adopts the allegations of all preceding counts." *Id.* at 1321. The next type of shotgun pleading is one "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. Then there is the third type where the plaintiff does "not separat[e] into a different count each cause of action or claim for relief." *Id.* at 1323. "Fourth and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are

---

[11] Plaintiff's additional contention that it and Halwani formed a fiduciary relationship by virtue of Halwani's promise to Plaintiff "that he would use Plaintiff's funds as his own and apply his best honest efforts and skills to putting those funds to a legitimate business use" is also deficient. ECF No. [1] at ¶ 44. *See Hogan v. Provident Life & Acc. Ins. Co.*, 665 F. Supp. 2d 1273, 1287 (M.D. Fla. 2009) (finding allegations that the plaintiff "placed trust in [the defendant] and that [the defendant] accepted that trust" amounting to nothing more than "conclusory allegations" and a mere recitation of the definition of a fiduciary relationship).

responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* Here, we are dealing with the fourth type.

While Plaintiff is alleging the same claims against both Defendants based on largely the same facts, there are important distinctions between Plaintiff's allegations against each Defendant that are not wholly fleshed out in the Complaint. For instance, the Complaint initially alleges that "Chase [ ] issued credit cards to Halwani and his wife with generous credit limits." ECF No. 1 at ¶ 36. Plaintiff does not specifically, or at least does not individually, allege that Valley issued credit cards or some other type of credit to the Halwanis. However, Plaintiff goes on to later allege that "Chase and Valley readily facilitated the fraud, such as by propping up Halwani with credit[.]" *Id.* at ¶ 37. This later allegation in paragraph 37 seems to indicate that both Valley and Chase provided the Halwanis with credit, yet, in its opposition to Defendants' Motions, Plaintiff appears to argue that only Chase provided the Halwanis with credit. *See generally* ECF No. [29]; ECF No. [37]. Based on those allegations then, it remains unclear whether Plaintiff is alleging that both Defendants extended lines of credit to the Halwanis or just Chase. Furthermore, Plaintiff does not clarify whether the Halwanis conducted in-person transactions at both banks or only at Chase bank. *See* ECF No. [1] at ¶¶ 3, 32.[12] Given the significance Plaintiff places on the in-person encounters and the extension of credit to establish the substantial assistance element of each of its claims, it

---

[12] In paragraph 3 of the Complaint, Plaintiff alleges "Many of the Halwanis' transactions occurred in-person, at Chase, working with a personal banker, Ms. Elizabeth Matos-Polit. Ms. Matos-Polit and her colleagues at Chase helped Isaac Halwani and his wife Giselle execute highly suspect transactions. . . . Valley likewise assisted the Halwanis in executing numerous highly suspect transactions." ECF No. [1] at ¶ 3. Additionally, in paragraph 32, Plaintiff appears to be initially discussing the Halwani's conduct at both Chase and Valley bank. *Id.* at ¶ 32. However, within that same paragraph, Plaintiff shifts to discussing examples of suspect transactions only at Chase. *See id.* Plaintiff then concludes paragraph 32 with the statement "Because the large cash transactions happened in person, they obviously could not have escaped the notice of bank personnel." *Id.* Thus, Plaintiff fails to indicate whether it is still only referring to transactions at Chase bank or both Valley and Chase bank in alleging that the Halwanis' transactions took place in-person.

is important for Valley to know whether Plaintiff is alleging the Halwanis ever received credit from Valley and whether they ever conducted in-person financial transactions at one of its branches. As such, if Plaintiff elects to file an amended complaint, it should clearly distinguish between Chase's conduct and Valley's conduct in separate Counts of the pleading as opposed to weaving their conduct together indiscriminately. Amending the pleadings in this way will ensure Chase and Valley have notice of the allegations that form the claims against each Defendant.

### B.  Plaintiff's Request for Attorney's Fees and Costs

The Court also addresses Plaintiff's request for attorneys' fees and costs. "[A] prayer for relief not available under the applicable law is properly subject to a motion to strike." *Hodge v. Orlando Utils. Comm'n*, No. 09-cv-1059, 2009 WL 4042930, at *4 (M.D. Fla. Nov. 23, 2009). Defendants argue that Plaintiff's request for attorney fees and cost must be stricken because the remedy is not available under the applicable law. Plaintiff's claims are each Florida state law claims, and "[u]nder Florida law, absent a specific statutory or contractual provision, a prevailing litigant has no general entitlement to attorney's fees." ECF No. [19] at 14 (quoting *Int'l Fid. Ins. Co. v. Americaribe-Moriarty JV*, 906 F.3d 1329, 1335 (11th Cir. 2018)); *see also* ECF No. [28] at 16. Plaintiff's aiding and abetting claims are common law claims, none of which arise under contract or statute. Moreover, Plaintiff fails to allege a statute which would entitle it to attorney's fees as a prevailing party. Although "[i]t can hardly be said that "Plaintiff's request for attorney's fees…actually prejudices Defendant[s] in any way, [and] the need for Defendant[s'] motion to strike is arguably weak," the motion is technically appropriate. *Queen for a Day, LLC v. J. Milton & Associates, Inc.*, Case No. 19-CV-24308, 2020 WL 12188440, at *2 (S.D. Fla. Aug. 20, 2020). Accordingly, the Court strikes Plaintiff's request for attorney's fees. However, the Court will not strike Plaintiff's requests for costs. As Plaintiff correctly points out, "there is 'venerable

presumption that prevailing parties are entitled to costs.'" ECF No. [29] at 18 (quoting *Marx*, 568 U.S. at 376; Fed. R. Civ. P. 54(d)(1)). As such, there is no basis for the Court to strike the request. *See Collier v. Wright Nat'l Flood Ins. Co.*, Case No.: 2:19-cv-49-FtM-38MRM, 2019 WL 1531895, *2 (M.D. Fla. Apr. 9, 2019) ("The Court will not, however, strike Collier's request for costs, since Federal Rule of Civil Procedures 54(d)(1) generally allows costs to the prevailing party.").

## IV.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendants' Motions**, ECF No. [19], and ECF No. [28],** are **GRANTED.**

2. The Complaint is **DISMISSED without prejudice** as to both JPMorgan Chase Bank, N.A. and Valley National Bancorp.

3. If Plaintiff elects to file an Amended Complaint, it must be filed **no later than November 18, 2024.**

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 1, 2024.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record