**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 24-cv-21385-BLOOM/Elfenbein**

FW DISTRIBUTING, LLC,

      Plaintiff,

v.

J.P. MORGAN CHASE BANK, N.A.
and VALLEY NATIONAL BANKCORP,

      Defendant.

_____/

**ORDER ON DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED COMPLAINT**

**THIS CAUSE** is before the Court upon Defendant JPMorgan Chase Bank, N.A.'s ("Chase") Motion to Dismiss Plaintiff's First Amended Complaint, ECF No. [70]. Plaintiff FW Distributing, LLC filed a Response in Opposition ("Response"), ECF No. [80], to which Chase filed a Reply, ECF No. [91]. The Court has reviewed the Motion, the supporting and opposing submissions, the applicable law, and is otherwise fully advised. For the reasons that follow, Chase's Motion is granted and Count One and Count Three of Plaintiff's First Amended Complaint are dismissed with prejudice.

**I.      BACKGROUND**

This action for damages stems from non-parties Isaac and Giselle Halwani's ("the Halwanis") alleged fraudulent conduct committed against Plaintiff using accounts located at banks owned by Chase. Plaintiff originally filed its Complaint asserting three counts of aiding and abetting against Chase for its purported role in facilitating the Halwanis' scheme to fraudulently steal millions of dollars from Plaintiff. However, Chase filed a motion to dismiss the Complaint, which the Court granted. *See* ECF No. [60].

### A. First Amended Complaint

On November 18, 2024, Plaintiff filed its First Amended Complaint alleging the following: Plaintiff FW Distributing is a Florida limited liability company whose "beneficial owner and principal is Steven M. Rhodes ("Rhodes"). ECF No. [62] at ¶ 14. Mr. Rhodes "originally met the Halwanis in January 2021." *Id.* at ¶ 34. Approximately one year later, Isaac Halwani proposed an investment to Rhodes involving Halwani's purported frozen distribution business, B"H Frozen Wheels ("B"H Frozen"). *See id.* at ¶ 34. Under the proposal, "Mr. Rhodes, through his business entity FW Distributing," would enter a business relationship with B"H Frozen where "FW Distributing would provide the capital" and B"H Frozen would receive bulk food purchase orders from food distributors, which B"H Frozen would then source from various suppliers and sell to the distributors. *Id.* at ¶ 34-35. The arrangement was that "B"H Frozen Wheels and Isaac Halwani would present FW Distributing with the purchase orders" from the food distributors, and Halwani would provide FW Distributing with the "suppliers invoice for the specified items and the wiring information to purchase the items from the distributors." *Id.* at ¶ 35. "FW Distributing would [then] wire the funds based on the wiring information provided." *Id.*

Under the arrangement, once B"H Frozen completed the delivery to the distributor, "FW Distributing was to share in the profits on the transaction with B"H Frozen Wheels." ECF No. [62] at ¶ 35. Initially, FW Distributing "received what [it] believed were several payments from distributors on successful deals." *Id.* However, the payments FW Distributing received were not payments from buyers but rather "a small amount of the money [the Halwanis] obtained from other investors and lenders to make these payments from bank accounts in the names of the purported buyers-distributors." *Id.* Although Rhodes believed he was sending and receiving funds from legitimate suppliers and distributors, it turned out the Halwanis "created fake email accounts to

communicate with Mr. Rhodes" and "generated fake purchase orders and invoices" to deceive Rhodes into "directing wire transfers from FW Distributing . . . to the Halwanis' business accounts at Chase." *Id.* at ¶ 36.[1] In the end, "Isaac and Giselle Halawani siphoned over $7 million from Plaintiff." *Id.* at ¶ 4.

The Amended Complaint alleges that over the course of four months, "FW Distributing transferred over $7.4 million for frozen food deals to bank accounts" that turned out to be "accounts created and controlled by the Halwanis." *Id.* at ¶ 41. During that time, FW Distributing sent "dozens of wires" ranging "from $200,000 to $700,000," *Id.* at ¶ 37 and "often there were mismatches between the actual account name and the designee on the wire that Halwani, in the guise of a fake supplier, requested." *Id.* "Chase [ ] nonetheless processed the wires." *Id.*

Once the funds arrived at the bank, "Chase allowed Halwani and his wife to operate accounts in the name of over a dozen separate Halwani-owned businesses to facilitate [Mr. Halwani's] shell game." *Id.* at ¶ 38. Chase also "issued credit cards to Halwani and his wife with generous credit limits," which were essential to keeping the fraudulent scheme afloat. *Id.* According to Plaintiff, Chase was well aware of the Halwanis' fraudulent scheme.

"The Halwanis began their banking relationship with Chase and Ms. Matos-Polit, their 'private client banker,' as early as 2010." *Id.* at ¶ 42. During the course of the relationship, Matos-Polit opened more than twenty separate accounts for the Halwanis, and as their private banker, she oversaw the Halwanis' brokerage account and "developed intimate knowledge of the Halwanis' business and personal accounts." *Id.* at ¶ 43.[2] Because Matos-Polit opened the Halwanis' business

---

[1] On July 1, 2024, Isaac Halwani pleaded guilty to fraud and was later sentenced to 51 months in federal prison. *See* ECF No. [62] at ¶ 3 (citing *United States v. Halwani*, No. 1:23-cr-20348-RNS (S.D. Fla.) (ECF Nos. 36-37, 39, 50).

[2] Unlike typical clients, Plaintiff alleges that by joining the private banking division, the Halwanis' accounts

accounts, she was aware of the stated purposes of those accounts and would have realized that "[t]he activity in the accounts did not match these descriptions at all. *Id.* at ¶¶ 44-45. For instance, the "BH" companies were all "supposedly 'self-funded' and the ongoing funding was to be from 'business operations.' In addition, the expected cash activity was not to exceed $30,000 per month on an aggregate basis; the expected check activity was not to exceed $400,000 monthly on an aggregate basis; and the expected electronic funds transfer activity was not to exceed $900,000 monthly on an aggregate basis." *Id.* at ¶ 44. However, the actual business activity was not consistent with the expected activity, as there were "frequent, round dollar transactions in large sums, frequent large cash transactions, international wires, repetitive transfers between related accounts, repetitive transfers between business and personal accounts, and repetitive instances of insufficient funds[.]" *Id.* at ¶ 45. Chase's automated AML system alerted to this highly unusual activity. *Id.* After reviewing the alerts and accompanying reports, it became clear to the analyst at Chase "that the Halwanis were engaged in unlawful activity," as none of the activity in the accounts could be explained as legitimate business operations. ECF No. [62] at ¶ 45.[3] Indeed, at one point in 2021 and 2022, "Chase restricted activity in the Halwanis' B"H Frozen Wheels account – one of the main accounts they used to pull off their fraud . . . due to an Office of Foreign Asset Controls ("OFAC") alert and later altogether restricted the Halwanis' access to the account. *Id.* at ¶ 7. Nevertheless, Chase, continued to allow the Halwanis to freely operate their scheme in

---

were subject to even closer review and large-scale transactions garnered substantial attention. ECF No. [62] at ¶ 43.

[3] In the Amended Complaint, Plaintiff outlines in specific detail the suspicious account activity taking place in the Halwanis' business accounts. However, the Court need not recite that activity in detail as Plaintiff does not allege that Chase analysts specifically identified that activity as suspicious or worthy of additional scrutiny when they allegedly conducted their review.

the remaining Chase accounts. By failing to halt the Halwanis' obvious fraudulent activity, Chase was "complicit in the fraudulent scheme." *Id.* at ¶ 66.

As a result of its conduct, its internal processes and procedures for detecting and investigating fraud, and Chase employees' personal relationships, which further facilitated the Halwanis' fraud, Plaintiff asserts two counts against Chase: (Count One) Aiding and Abetting Fraud and (Count Three) Aiding and Abetting Conversion. *See id.*

Count One alleges Chase aided and abetted Isaac Halwani's defrauding of Plaintiff because Chase bankers personally carried out suspicious transactions and because Chase had systems in place to alert it when certain transactions occurred "such as: (1) large cash transactions; (2) electronic funds transfers sent in large, round dollar amounts; (3) repetitive or unusual electronic funds transfer activity; (4) funds transfers sent or received from the same person to or from different accounts; (5) unusual funds transfers among related accounts or among accounts that involve the same or related principals; and (6) insufficient funds transactions/bounced checks." *Id.* at ¶ 136. According to Plaintiff, these systems alerted Chase to the fraudulent conduct in the Halwanis' accounts and ultimately led Chase to conduct an account review. *Id.* at ¶ 137. Upon learning of the fraudulent activity and restricting the Halwanis' BH Frozen Wheels accounts in 2021 and 2022, "Chase permitted the Halwanis to continue using their other accounts." *Id.* at ¶ 138. By allowing the Halwanis to continue using their bank accounts despite Chase's actual knowledge of the fraudulent activity, Chase "substantially assisted the perpetuation of the fraud." *Id.*

In addition to allowing the Halwanis to continue funneling money through their Chase bank accounts, Chase further perpetuated the Halwanis' fraud by "open[ing] bank accounts for other victims" and then allowing the Halwanis to transact their business through those accounts.

*Id.* Chase also facilitated the scheme by extending credit to the Halwanis, "even though it was apparent from the deposit accounts that the Halwanis were deeply in debt," thereby "prolonging the game of musical chairs they were playing with the victims' funds." *Id.*

Count Three alleges that, given the automated alerts, Chase's manual review of the Halwanis' accounts, and Chase's knowledge of the accounts' supposed business purposes, Chase acquired knowledge of the Halwani's conversion of Plaintiff's funds. *See id.* at ¶ 152. Accordingly, because Chase allowed the Halwanis to continue using their accounts to convert Plaintiff's funds, Chase aided and abetted in the conversion of Plaintiff's funds. *Id.* at ¶¶ 152-53.

Chase now seeks dismissal of Count One and Count Three of the Amended Complaint as Plaintiff fails to allege that Chase had actual knowledge of the underlying misconduct or that Chase substantially assisted the Halwanis in carrying out the alleged misconduct. *See* ECF No. [70] at 4.[4]

Plaintiff responds that given Chases' extensive internal monitoring procedures and subsequent manual review of the Halwanis' accounts, the Halwanis' highly suspicious, if not illegal, conduct in the business accounts, and the individualized private banking services Chase employee Ms. Matos-Polit provided, "Chase simply could not have avoided observing the fraudulent scheme victimizing Plaintiff and other." ECF No. [80] at 8-9. As such, Plaintiff contends it has established Chase's actual knowledge of the underlying fraud. As for substantial assistance, not only did Chase do nothing to stop the obvious fraudulent scheme, but Chase also opened more accounts and extended credit to the Halwanis in order to allow the Halwanis to further prolong their misconduct. *See id.* at 18-19.

---

[4] Chase further argues that Count III should be dismissed because Plaintiff has failed to establish the underlying conversion claim. ECF No. [70] at 18. However, the Court does not address the underlying conversion issue because the Court determines that Plaintiff has failed to establish actual knowledge and substantial assistance in Count III.

## II.   LEGAL STANDARD

### A.  Failure to State a Claim for Relief

"On a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils–Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, No. 09–495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th

Cir. 2006). "[T]he court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted). In considering a motion to dismiss, the Court is limited to the facts contained in the complaint and attached exhibits. *See Thaeter*, 449 F.3d at 1352.

## III.   DISCUSSION

### A.  Motion to Dismiss

Chase argues that both Count One and Count Three of the First Amended Complaint should be dismissed because Plaintiff fails to sufficiently plead claims for aiding and abetting. Plaintiff responds that the Amended Complaint's allegations are sufficient.

To adequately assert an aiding and abetting claim under Florida law, a plaintiff must allege "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abet[o]r; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906-07 (11th Cir. 2012) (citing *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991); *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So.2d 368, 372 (Fla. 5th DCA 2005)).

### a.  Actual Knowledge

Chase argues that to successfully plead an aiding and abetting claim, a plaintiff must adequately allege that the defendant had actual knowledge of the underlying fraud. Chase contends that although the Amended Complaint is lengthier than the Original Complaint, Plaintiff still offers no allegations that would plausibly suggest Chase had actual knowledge of the Halwanis' unlawful activity. *See* ECF No. [70] at 6. According to Chase, "Plaintiff again relies on Chase's 'policies

and procedures' and AML alert systems and reviews, as well as alleged suspicious activity in the account, to establish knowledge." *Id.* However, such allegations demonstrate, at most, that Chase should have known of the fraudulent conduct and conversion, not that Chase had actual knowledge of the fraud. Chase notes that, notwithstanding the addition of new allegations in the Amended Complaint, Plaintiff "never identifies a single specific transaction that an employee 'helped' with . . . [n]or does Plaintiff explain how 'helping' with atypical transactions constitutes actual knowledge of wrongdoing." *Id.* at 7.

Moreover, the Amended Complaint references a number of alerts triggered by the Halwanis' account activity, but the Amended Complaint never specifically discusses any individual alert that would have informed Chase that the Halwanis were engaged in fraudulent activity. Instead, Chase argues that Plaintiff continues to rely on mere red flags to infer actual knowledge such as "(i) large cash transactions, (ii) large, round dollar transfers, (iii) repetitive or unusual electronic fund transfer activity, (iv) transfers sent or received from the same person to or from different accounts, (v) unusual fund transfers among related accounts or among accounts, and (vi) insufficient funds transactions/bounced checks." *Id.* at 8. Chase contends that reliance on those red flags "require [impermissibly] piling inference upon inference" to establish actual knowledge. *Id.* at 10. Given the generalized nature of the actual knowledge allegations, Chase maintains that "Plaintiff falls markedly short of pleading a viable claim for relief under an aiding and abetting theory of liability." *Id.* at 12.

Plaintiff responds that such specificity is not required to establish actual knowledge. According to Plaintiff, it need only establish that Chase had "a 'general awareness' that the Halwanis were using Chase accounts to carry out improper activity." ECF No. [80] at 8-9. Plaintiff asserts it does not need to allege that "Chase was aware of the full details of the Halwanis'

fraudulent conduct as such a requirement "would collapse any distinction between a claim for conspiracy and a claim for aiding and abetting liability." *Id.* at 10. To support that Chase had general awareness of the fraudulent scheme, Plaintiff points to its allegations that the Halwanis' accounts at Chase triggered alerts numerous times each month which were then subject to manual review. *Id.* at 12. Because Chase employees were required to review these transactions once alerted, Plaintiff contends the employees would have noticed the highly irregular transactions and ultimately discovered the obvious Ponzi scheme being run through the Halwanis' accounts. *Id.* Plaintiff points out there are allegations that Chase did in fact discover the fraud as Plaintiff alleges that Chase restricted activity in the Halwanis' B"H Frozen Wheels account . . . due to an Office of Foreign Asset Controls ("OFAC") alert and later altogether restricted the Halwanis' access to the account." ECF No. [62] at ¶ 7. Accordingly, since the "facts [alleged] lead to an inference that Chase at the very least developed a general awareness" of the underlying fraud, Plaintiff has satisfied the actual knowledge requirement for its claims against Chase. ECF No. [80] at 11.

A review of the Amended Complaint and governing law once again compels the Court to find that Plaintiff has failed to sufficiently plead the necessary elements for both of its aiding and abetting claims against Chase.[5]

"Florida, like other jurisdictions, recognizes that as a general matter, a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship'. . . [and] generally do[es] not owe non-customers a duty to protect them from fraud." *Herrera v. TD Bank, N.A.*, 682 F. Supp. 3d 1271, 1275 (S.D. Fla. 2023) (quoting *Chang v. JPMorgan Chase Bank*, 845 F.3d 1087, 1094 (11th Cir. 2017)); *Rusty115 Corp. v. Bank of Am., N.A.*, No. 22-CV-22541, 2023 WL

---

[5] "The elements of aiding and abetting are the same for each of these claims, so the Court considers them together." *Letidas Logistics, LLC*, 2024 WL 4826380, at *3 (citing *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013)).

6064518, (S.D. Fla. Sept. 18, 2023) ("[B]anks ordinarily do not owe a fiduciary duty to their own customers, and so it follows that a bank would not owe a fiduciary duty to a third-party who chooses to deposit money into a customer's account.") (internal citation omitted). In fact, banks generally have "the right to assume that individuals who have the legal authority to handle the entity's accounts do not misuse the entity's funds." *O'Halloran v. First Union Nat. Bank of Fla.*, 350 F.3d 1197, 1205 (11th Cir. 2003). Accordingly, "[i]t makes sense [ ] that the 'case law finding banks liable to third party non-customers necessarily sets a high standard for liability" in aiding and abetting cases. *Letidas Logistics, LLC v. Citibank, N.A.*, Case No. 0:24-cv-61469, 2024 WL 4826380, at *3 (S.D. Fla. Nov. 19, 2024) (citing *Gevaerts v. TD Bank, N.A.*, 56 F. Supp. 3d 1335, 1343 (S.D. Fla. 2014)).

Therefore, "when a claim of aiding and abetting is asserted against a bank, the [knowledge element] will only be satisfied if the plaintiff pleads facts demonstrating that the bank had 'actual knowledge' of the wrongdoings." *Perlman v. Wells Fargo, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014) (per curium) (quoting *Lawrence*, 455 F. App'x at 907). While knowledge may be shown by circumstantial evidence, "in actions involving the liability of a bank for aiding and abetting its customer's Ponzi scheme, the second element, knowledge, will only be satisfied if the bank had '*actual* knowledge of the fraudulent activities.'"[6] *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013) (quoting *Lawrence*, 455 F. App'x at 907) (emphasis added); *see Isaiah v. JPMorgan Chase Bank, N.A.*, Case No. 16-CIV-21771, 2017 WL 5514370, at *3 (S.D.

---

[6] While Plaintiff suggests that the standard for actual knowledge is something less than actual knowledge of the fraudulent activity, *see* ECF No. [80] at 10-12, that argument is foreclosed by case law, particularly where the defendant does not owe a fiduciary duty the plaintiff. *See e.g.*, *Perlman*, 559 F. App'x at 993; *Wiand*, 938 F. Supp. 2d at 1244; *Lamm v. State Street Bank & Trust Co.*, 889 F. Supp. 1321, 1332 (S.D. Fla. 2012); *Bansal v. TD Ameritrade, Inc.*, 2024 WL 3009423, at *7 (S.D. Fla. June 7, 2024) ("To be liable, the bank would have had to have actual knowledge of Diamond's fraudulent activities."); *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1343 (S.D. Fla. 2018) ("Florida law requires that a defendant have actual 'knowledge of the underlying fraud[.]'"); *Chang*, 845 F.3d at 1094-95.

Fla. Nov. 15, 2017). "[E]vidence establishing negligence, i.e., that a bank 'should have known,' will not suffice." *Wiand*, 938 F. Supp. 2d at 1244 (quoting *Aetna Cas. And Sur. Co. v. Leahey Const. Co*, 219 F.3d 519, 536 (6th Cir. 2000)). Accordingly, "[a]lleging that a bank disregarded 'red flags' such as 'atypical activities' on a customer's account is insufficient to establish knowledge." *Lamm v. State Street Bank & Trust Co.*, 749 F.3d 938, 950 (11th Cir. 2014) (citing *Ct. Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, No. 05-60080CIV, 2008 WL 926513, at *1 (S.D. Fla. Mar. 31, 2008); *Rosner v. Bank of China*, No. 06 CV 13562, 2008 WL 5416380, at *6 (S.D.N.Y. Dec. 18, 2008)); *see also Lawrence*, 455 F. App'x at 907 ("Florida law does not require banking institutions to investigate transactions.").

Moreover, "While the element of actual knowledge may be alleged generally, the plaintiff still must accompany that general allegation with specific allegations of specific facts that give rise to a strong inference of actual knowledge regarding the underlying fraud." *Todd Benjamin Int'l, Ltd. v. Grant Thorton Int'l*, 682 F. Supp. 3d 1112, 1136-37 (S.D. Fla. 2023) (quoting *Lamm v. State Street Bank & Trust Co.*, 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012)).

Plaintiff fails to satisfy the actual knowledge element for its aiding and abetting claims as the Amended Complaint lacks any specific allegation regarding when or how Chase acquired *actual* knowledge of the underlying fraud. Plaintiff insists that its allegations are sufficient to establish actual knowledge because Plaintiff is not simply alleging that Chase ignored red flag alerts, but instead that Chase properly followed internal procedures, which included Chase analysts personally reviewing the account activity and therefore becoming aware that the Halwanis' activity was fraudulent. However, those are the exact types of allegations that courts have found insufficient to demonstrate actual knowledge.

For example, in *Wiand v. Wells Fargo Bank, N.A.*, the plaintiff alleged that (1) the defrauder's "account activity reflected 'unusual trends and patterns of transfers,' which the bank should have recognized as suspicious;" (2) the defrauder "transferred and commingled large amounts of money between accounts held at Wachovia, including between individual, non-profit, and business accounts;" (3) "Wachovia reviewed the personal and financial history of [the fraudster] prior to funding mortgages for him;" (4) the defrauder's "transactions triggered Wachovia's fraud alert system;" and (5) "Wachovia's *private banking group received reports* alerting them to over 200 transactions involving Nadel valued over $25,000." 938 F. Supp. 2d 1238, 1246 (M.D. Fla. 2013). The district court in *Wiand* ultimately found that, notwithstanding the suspicious activity, the alerts, and the reports, the plaintiff failed to allege anything more than red flags that *should have* alerted the bank to the fraudulent scheme. *See id.*

Although Plaintiff asserts the Chase analysts uncovered the fraud upon reviewing reports of the Halwanis' account activity, "[c]onclusory statements that a defendant actually knew is insufficient to support an aiding and abetting claim where the facts in the complaint only suggest that the defendant should have known that something was amiss." *Platinum Estates, TD Bank, N.A.*, No. 11–60670–CIV, 2012 WL 76079, at *3 (S.D. Fla. Mar. 8, 2012) (quoting *Groom v. Bank of America*, No. 8:08–cv–2567–JDW–EAJ, 2012 WL 50250, at *2–3 (M.D. Fla. Jan. 9, 2012) (additional level of quotation and citation omitted)). The alerts and accompanying reports Chase received merely provided Chase employees with information indicating suspicious activity since the reports themselves did not identify fraud, nor did they conclude that the accounts were being used to carry out a fraudulent scheme. Therefore, unlike this Court's decision in *Pearson v. Deutsche Bank Ag*, where the plaintiff "detail[ed] email exchanges and communications between bank employees regarding the improper use of custodial accounts," Plaintiff merely assumes that

the Chase employees necessarily discovered fraud simply by virtue of reviewing the Halwanis' account and the alerts to suspicious activity. No. 21-CV-22437, 2022 WL 951316, at *8 (S.D. Fla. Mar. 30, 2022); *Cf Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1344 (S.D. Fla. 2018) ("Although Plaintiffs identify several 'red flags' that should have indicated to the Kornfeld, Klager, and Knowles Defendants that something was amiss with the Woodbridge securities, these red flags fail to establish actual knowledge[.]"). This conclusory assumption that the Chase employees necessarily discovered fraud simply by virtue of reviewing the Halwanis' account and the alerts to suspicious activity does not overcome the high pleading standard to establish a bank's actual knowledge of the underlying fraud. *See Metrocity Holdings, LLC v. Bank of Am., N.A.*, No. 22-CV-80980-BER, 2023 WL 6064516, at *9 (S.D. Fla. Sept. 18, 2023) ("While the element of actual knowledge may be alleged generally, the plaintiff still must accompany that general allegation with allegations of specific facts that give rise to a strong inference of actual knowledge regarding the underlying fraud.") (quoting *Todd Benjamin Int'l, Ltd v. Grant Thornton Int'l., Ltd.*, 682 F. Supp. 3d 1112, 1136-37 (S.D. Fla. 2023) (additional level of citation and quotation omitted)). Although the suspicious activity allegedly included in the banks' alerts and reports '"may have put the banks on notice that some impropriety may have been taking place, th[e]se alleged facts do not create a strong inference of actual knowledge' of wrongdoing." *Wiand*, 938 F. Supp. 2d at 1244–45 (quoting *Lerner v. Fleet Bank N.A.*, 459 F.3d 273, 294 (2d Cir. 2006)); *see Isaiah v. JPMorgan Chase Bank, N.A.*, Case No. 16-CIV-21771, 2017 WL 5514370, at *4 (S.D. Fla. Nov. 15, 2017) (finding that "even if [the bank] detected suspicious activity on the accounts as alleged, this only demonstrates knowledge of the symptoms of the Ponzi scheme, not JPMC's actual knowledge of the scheme itself.").

Plaintiff's allegations involving Ms. Matos-Polit fare no better. Nothing about Ms. Matos-Polit's alleged conduct creates a strong inference she had actual knowledge of the fraudulent scheme. There are no allegations that Ms. Matos-Polit "made misrepresentations or otherwise actively engaged in wrongdoing" or that her conduct evidenced knowledge of the Halwanis' Ponzi scheme. *Angell v. Allergan Sales, LLC*, Case No. 3:18-cv-282-J-34JBT, Case No. 3:18-cv-283-J-34JBT, 2019 WL 3958262, at *10 (M.D. Fla. Aug. 22, 2019). While Ms. Matos-Polit was the Halwanis' private banker and regularly facilitated and reviewed the Halwanis' account activity, simply reviewing accounts where fraudulent activity took place does not necessarily mean she observed or ultimately understood that the Halwanis were carrying out a fraudulent Ponzi scheme.[7] *See Lawrenc*e, F. App'x at 905-06 (finding that notwithstanding that bank employees regularly reviewed suspicious account activity by the defrauder, the plaintiff had not made allegations that plausibly supported an inference of actual knowledge); *Otto Candies, LLC v. Citygroup, Inc.*, Case No.: 1:16-cv-20725-DPG, 2023 WL 6418135, at *7 (S.D. Fla. 2023) (finding no actual knowledge simply because bank approved false documentation when Plaintiff failed to explain how the bank knew the documents were false). Plaintiff assumes that because Ms. Matos-Polit was intimately involved with the Halwanis' accounts, it would be virtually impossible for her not to have become aware of the obvious fraud taking place within the Halwanis' accounts. However, such inferences are not permissible to establish actual knowledge against a bank.[8] *See B-Smith Enters., LP v. Bank*

---

[7] The Court rejects Plaintiff's claim that simply because the Halwanis were able to continue operating their accounts despite alerts on the account means that Ms. Matos-Polit or any other Chase employee necessarily had to be aware of the underlying fraudulent scheme in order to override the alert and facilitate the transactions. Continuing to allow an individual to bank in an account notwithstanding alerts of suspicious activity does not create a strong inference of actual knowledge, but instead simply implies that the bank should have known of the potential for fraud. *See Isaiah*, 2017 WL 5514370, at *4.

[8] The Court also notes that Ms. Matos-Polit was not providing unusual services or non-routine services. Accordingly, stronger evidence of complicity is required. *See Rusty 115 Corp. v. Bank of Am., N.A.*, No. 22-CV-22541-BER, 2024 WL 1619697, at *8 (S.D. Fla. Apr. 15, 2024) ("Aiding and abetting can be shown

*of Am.*, N.A., No. 21-80674-CV, 2021 WL 8316764, at *2 (S.D. Fla. Dec. 27, 2021), *aff'd*, No. 22-11383, 2023 WL 2034419 (11th Cir. Feb. 16, 2023) ("Plaintiff must allege facts that show *concrete evidence* of Defendant's knowledge, such as accepting a payment for overstating the amount in an escrow account or allowing repeated overdrafts of a trust account.").

As the Eleventh Circuit explained in *Perlman v. Wells Fargo Bank, N.A.*, allegations in the complaint that there were "a multitude of atypical transactions and procedural oddities, including: [the defrauder's] opening of various accounts, numerous transfers amongst the accounts within short time periods, thousands of deposits of even dollar amounts, large cash deposits and withdrawals, the absence of any investment activity, and Wells Fargo's lifting of the freeze on the Wealth Builders account without further investigation," all "f[e]ll short of raising a plausible inference that Wells Fargo actually knew that [the defrauder] was engaging in fraudulent activity." 559 F. App'x at 993.[9] Just as in the Original Complaint, Plaintiff fails to articulate specifically how Ms. Matos-Polit became aware of the Halwanis' fraudulent scheme and instead relies on the fact that Ms. Matos-Polit was well-positioned to observe the fraud to ultimately conclude that she had actual knowledge of the scheme. But again, "such an inference is impermissible, even at the motion to dismiss stage of a proceeding." *FW Distrib., LLC*, 2024 WL 4665255, at *10; *see also Angell*, 2019 WL 3958262, at *13 (explaining that the difference between sufficient actual knowledge allegations and deficient ones "is the difference between having information from

---

[9] through circumstantial evidence. The degree of knowledge that can be inferred 'depend[s] on how ordinary the assisting activity is in the business involved.' [ ] '[S]tronger evidence of complicity' is required 'for the alleged aider and abettor who conducts what appears to be a transaction in the ordinary course of his business,' whereas conduct that is atypical or lacks business justification may allow for an inference of knowledge.") (quoting *Perlman*, 2011 WL 13108060, at *6 and *Woods v. Barnett Bank of Fort Lauderdale*, 765 F.2d 1004, 1009-10 (11th Cir. 1985)).

[9] The Court relied on the *Perlman* decision in it prior order. *See FW Distrib., LLC, v. J.P. Morgan Chase Bank, N.A.*, Case No. 24-cv-213852024 WL 4665255 at *9 (S.D. Fla. Nov. 4, 2024).

which one could or even should deduce the existence of fraud, and actually making that deduction.").[10]

The closest Plaintiff comes to establishing Chase's actual knowledge of the underlying fraud is the allegation that:

> "Chase restricted activity in the Halwanis' B"H Frozen Wheels account – one of the main accounts they used to pull off their fraud . . . due to an Office of Foreign Asset Controls ("OFAC") alert and later altogether restricted the Halwanis' access to the account. ECF No. [62] at ¶ 7. Nevertheless, Chase, continued to allow the Halwanis to freely operate their scheme in the remaining Chase accounts.

ECF No. [62] at ¶ 7. By freezing the main account used to carry out the fraud, there is a potential inference that Chase was at least generally aware that the Halwanis were engaged in suspicious activity. However, Plaintiff's allegations ultimately do not assert actual knowledge of fraud.

First, the mere freezing of a defrauder's account does not, in and of itself, give rise to actual knowledge of a fraudulent scheme, even when the basis for the freeze is suspicious activity. *See Perlman*, 559 F. App'x at 993 (explaining that while a freeze on an account "may have put the bank on notice that some impropriety may have been taking place, those alleged facts do not create a strong inference of actual knowledge[.]") (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 294 (2d Cir. 2006)); *see also Letidas Logistics LLC*, 2024 WL 4826380, at *4 (same).

Even assuming the reason for the freeze and later restriction on the B"H Frozen account was because Chase became aware of the Halwanis' fraudulent activity, such knowledge does not create a strong inference that Chase was aware of fraudulent activity in the Halwanis' *other*

---

[10] Plaintiff argues, in the alternative, that Ms. Matos-Polit's conduct at least supports a plausible inference of willful blindness. *See* ECF No. [80] at 15. However, the Court is not convinced. No court in this Circuit has found that a defendant simply disregarding alerts and other suspicious transactions establishes willful blindness and have found the exact opposite. *See Lamm v. State Street Bank and Trust*, 749 F.3d 938 (11th Cir. 2014) (Alleging that a bank disregarded "red flags" such as "atypical activities" on a customer's account is insufficient to establish knowledge.). Accordingly, Plaintiff's willful blindness theory fails as well.

accounts in which Chase is alleged to have facilitated the fraudulent scheme. Indeed, the fact that Chase restricted the Halwanis' access to the B"H Frozen account, while still leaving the remaining accounts open, indicates that Chase was only aware of suspicious activity in the B"H Frozen account because, otherwise, Chase would have restricted the Halwani's remaining accounts as well.

Moreover, Plaintiff cannot reasonably contend that knowledge of fraud in the B"H Frozen account supports actual knowledge necessary for an aiding and abetting claim as Plaintiff argues that Chase shut down access to the account upon learning of the Halwanis' fraud. Therefore, accepting the allegations as true, any fraud that took place in the B"H Frozen account prior to Chase's freezing the account occurred without Chase's actual knowledge. Accordingly, Plaintiff has failed to plausibly establish that Chase had actual knowledge of the Halwanis' underlying fraud.

### b. Substantial Assistance Requirement

Even assuming the freezing of the B"H Frozen account is indicative of actual knowledge, the Court finds that Plaintiff fails to adequately allege substantial assistance. "Substantial assistance occurs when a defendant affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the breach to occur." *Pearson*, 2022 WL 951316, at *8 (quoting *Gevaerts*, 56 F. Supp. 3d at 1341). "A defendant does not provide substantial assistance unless his action, or inaction, was a 'substantial factor in causing the [underlying violation].'" *Pearson v. Deutsche Bank AG*, Case No. 21-cv-22437, 2023 WL 2610271, at *26 (S.D. Fla. Mar. 23, 2023) (quoting *In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 348 (Bankr. S.D. Fla. 2013)). Accordingly, courts have determined that allegations of "passive conduct by a bank which is being used as an unknowing conduit to further a scheme" will be insufficient to establish substantial

assistance. *Mettrocity Holdings, LLC v. Bank of America, N.A.*, Case No. 22-CV-80980-BER, 2023 WL 6064516, at *8 (S.D. Fla. Sept. 18, 2023).

Moreover, "mere inaction 'constitutes substantial assistance only if the defendant owes a fiduciary duty *directly* to the plaintiff." *Chang*, 845 F.3d at 1098 (quoting *Lerner*, 459 F.3d at 295); *see Groom*, 2012 WL 50250, at *4 ("an allegation of the 'failure to act, absent a duty to act, is not substantial assistance." (quoting *Hines v. FiServ, Inc.*, No. 8:08–cv–2569–T–30AEP, 2010 WL 1249838, at *4 (M.D. Fla. Mar. 25, 2010)).

Plaintiff alleges Chase substantially assisted the Halwanis by: (1) "opening accounts for other victims of the fraud and over which the Halwanis had authority to execute transactions;" (2) "by extending credit" despite the fact that "the Halwanis were  consistently bouncing checks and overdrawing their accounts, and despite knowing from the account activity that the Halwanis were deeply indebted to various lenders and credit cards issuers;" and (3) "by smoothing over concerns about the Halwanis' transactions and allowing the Halwanis to continue using the accounts despite the indicia of illegal activity occurring therein, of which Chase was aware." ECF No. [80] at 18 (citing ECF No. 62 at ¶¶ 38, 45-47, 50, 53, 56-57, 59, 63, 78-81, 84, 89, 94-95, 100, 138). However, none of Chase's alleged conduct could reasonably be considered a substantial factor in carrying out the Halwanis' scheme given that "[t]he amount of assistance alleged is minor in comparison to the massive scope of [the] overall fraudulent scheme." *Richter v. Wells Fargo Bank NA*, No. 2:11-CV-695-FTM-29, 2015 WL 163086, at *3 (M.D. Fla. Jan. 13, 2015) (quoting *In re Palm Beach Fin. Partners, L.P.*, 517 B.R. 310, 348 (Bankr. S.D. Fla. 2013)).

Moreover, while the Amended Complaint provides extensive detail regarding the services Chase provided, at most, Plaintiff's allegations demonstrate that Chase permitted the Halwanis and other victims to bank at Chase and that Chase provided the Halwanis with credit cards. As the

Eleventh Circuit explained in *Lawrence v. Bank of America, N.A.*, "allegations—that the bank permitted its client, the wrongdoer, to 'create accounts, transfer funds among accounts, and make withdrawal from accounts'—[are] insufficient to establish that the defendant bank had substantially assisted in its client's fraud. No. 8:09–cv–2162–T–33TGW, 2010 WL 3467501, at *4 (M.D. Fla. Aug. 30, 2010) (quoting *Rosner v. Bank of China*, No. 06 CV 13562, 2008 WL 5416380, at *12-13 (S.D.N.Y. Dec. 18, 2008)). Indeed, merely allowing third parties to open accounts is nothing more than a passive routine banking service, and that the Halwanis were permitted to be on the accounts merely implies that Chase allowed the Halwanis to engage in arguably suspicious transactions.[11] Such conduct does not satisfy the substantial assistance prong, particularly where Chase had no fiduciary duty to safeguard the money in those accounts or otherwise investigate those accounts. *See Groom*, 2012 WL 50250, at *4 ("Plaintiff's assertion that the Defendant banks 'made it possible for Pearlman and his cohorts to deposit vast sums of money' is likewise insufficient. (Second Am. Compl., p. 10, ¶ 15). This is, at most, a conclusory allegation that the banks permitted a customer to engage in suspicious transactions, which fails to establish substantial assistance.") (quoting *Lawrence*, 2010 WL 3467501, at *4; *Rosner*, 2008 WL 5416380 at *12–13); *Metrocity Holdings, LLC v. Bank of America, N.A.*, Case No. 22-CV-80980-BER, 2023 WL 6064516, at *8 (S.D. Fla. Sept. 18, 2023) (finding that mere "passive conduct by a bank which was being used as an unknowing conduit to further a scheme" is insufficient to establish substantial assistance.). Plaintiff does not allege that Chase knowingly concealed any

---

[11] The insignificance of this conduct is further buttressed by the fact that banks have "the right to assume that individuals who have the legal authority to handle the entities accounts do not misuse the entities' accounts." *See O'Halloran*, 350 F.3d at 1205. In other words, simply because the Halwanis were on these victims' accounts was not inherently suspicious, nor did it require Chase to conduct an additional investigation before it permitted the parties to carry out the transactions.

information or made misrepresentations about the Halwanis' activity. Accordingly, Chase's alleged conduct does not constitute affirmative activity amounting to substantial assistance.

Furthermore, as the Court explained in its previous Order, simply extending a line of credit to the Halwanis does not amount to substantial assistance. *See FW Distrib.,* 2024 WL 4665255, at *12; *Cf. ZP No. 54 Ltd. Partnership v. Fidelity and Deposit Co., of Maryland*, 917 So.2d 368, 372 (Fla. 5th DCA 2005) (finding the defendant "did not provide substantial assistance to advance the commission of the alleged fraud by simply issuing performance bonds"). Where "[t]here is no allegation that the bank[] knew [the defrauder] would use the borrowed funds in his fraudulent scheme" there is no allegation of substantial assistance. *Groom*, 2012 WL 50250, at *4. Once again, the Court points out that:

> Plaintiff makes no claim that Chase issued the credit cards for the specific purpose of facilitating the Halwanis' Ponzi scheme or that the credit cards were a "substantial factor in bringing about [Plaintiff's] alleged injury." *Id.* Even assuming the Chase credit cards prevented the Halwanis' scheme from fizzling out quicker than it did, there are no allegations that the cards were a necessary or even an important component of the Halwanis' scheme such that the Court could conclude issuance of the cards amounted to substantial assistance. *See In re Palm Beach Finance Partners, L.P.*, 517 B.R. at 348 ("Substantial assistance requires an affirmative step on the part of the aider-and-abettor that is a 'substantial factor'" in bringing about the alleged harm).

*FW Distrib.*, 2024 WL 4665255, at *12. Plaintiff insists that its Amended Complaint is distinguishable from the allegations in the Original Complaint because they "show[ ] that Chase understood that the Halwanis were in financial straits due to their frequent lending transactions in the hundreds of thousands of dollars, multiple deposits referencing loans, and their frequent bounced checks and account overdrafts." ECF No. [80] at 18-19. However, those allegations simply suggest that Chase unwisely lent funds to individuals who were highly leveraged and engaged in potentially suspicious activity. Since Chase did not owe a fiduciary duty to Plaintiff, Chase had no obligation to conduct any further investigation to determine whether the line of credit

was being utilized to carry out a fraudulent scheme. *See Wiand*, N.A., 86 F. Supp. 3d at 1323; Lawrence, 455 F. App'x at 907. This is particularly the case here, where Chase provided the Halwanis' with ordinary credit cards in the normal course of business. Consequently, the line of credit does not establish substantial assistance.

Finally, Plaintiff contends that since the Halwanis' account activities triggered numerous alerts, the only way the Halwanis could have continued using their accounts was if Ms. Matos-Polit and other Chase employees had smoothed over internal concerns about the Halwanis' transactions. However, "a bank's failure to close accounts upon the discovery of suspicious activity will not support an inference of substantial assistance when there are no alleged facts to support the theory that the banks owed a fiduciary duty to Plaintiff or that the accounts in question were trust accounts." *Millstein v. Wells Fargo Bank, N.A.*, No. 1:24-CV-22142-DPG, 2025 WL 373466, at *20 (S.D. Fla. Jan. 15, 2025), report and recommendation adopted, No. 1:24-CV-22142, 2025 WL 894771 (S.D. Fla. Mar. 24, 2025). Accordingly, Plaintiff cannot rely on the Chase employees' failure to close the accounts to establish substantial assistance.[12]

As Plaintiff has failed to sufficiently establish either actual knowledge or substantial assistance, both of Plaintiff's aiding and abetting claims against Chase must be dismissed.[13]

### c. Dismissal With Prejudice

"When a plaintiff repeatedly fails to cure deficiencies[,] a district court need not grant additional opportunities to amend." *Bright v. Thomas*, 754 F. App'x 783, 789 (11th Cir. 2018).

---

[12] Moreover, because Plaintiff has not established that Matos-Polit was actually aware of the fraudulent scheme, merely ignoring the red flag alerts does not amount to substantial assistance.

[13] "In addressing aiding-and-abetting liability, courts are '[m]indful of the potentially devastating impact aiding-and-abetting liability might have on commercial relationships.'" *Wiand*, 938 F. Supp. 2d at 1244 (quoting *Woods v. Barnett Bank of Ft. Lauderdale*, 765 F.2d 1004, 1009 (11th Cir. 1985)). That is why, today, the Court is unwilling to accept Plaintiff's offer to extend the tort beyond its reasonable limit.

Moreover, "if a more carefully drafted complaint could not state a claim and amendment would be futile, dismissal with prejudice is proper." *Cavero v. One W. Bank FSB*, 617 F. App'x 928, 930 (11th Cir. 2015). Despite the Court providing Plaintiff with an opportunity to amend its Complaint to cure its actual knowledge and substantial assistance allegations, Plaintiff has failed to establish either element of its aiding and abetting claims against Chase. Accordingly, given the consistent deficiencies in Plaintiff's allegations, the Court finds that Plaintiff could not state a claim even with a more carefully draft complaint. *See Rivas v. Bank of New York Mellon*, 777 F. App'x 958, 965-66 (11th Cir. 2019) (concluding the district court "properly determined that it would have been futile" to give the plaintiff "a third bite at the apple"). As such, amendment would be futile and therefore, Plaintiff's Amended Complaint is dismissed with prejudice.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Chase's Motion to Dismiss**, ECF No. [70],** is **GRANTED.**

2. The Complaint is **DISMISSED with prejudice** as to JPMorgan Chase Bank.

3. The Clerk is directed to **CLOSE** this case.

4. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 6, 2025.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record